916 So.2d 1099 (2005)
Robert J. ROGERS
v.
CITY OF BATON ROUGE.
No. 2004 CA 1001.
Court of Appeal of Louisiana, First Circuit.
June 29, 2005.
*1100 Michael E. Ponder, Parish Attorney, Richard B. Nevils, Assistant Parish Attorney, Baton Rouge, Counsel for Defendant-Appellant City of Baton Rouge.
Benn Hamilton, Baton Rouge, Counsel for Plaintiff-Appellee Robert J. Rogers.
Before: GUIDRY, GAIDRY, McDONALD, McCLENDON, and WELCH, JJ.
GAIDRY, J.
The City of Baton Rouge (the City) appeals a judgment of the 19th Judicial District Court, finding it partially at fault and liable to the plaintiff, Robert J. Rogers, for damages for personal injuries. We reverse the trial court's judgment for the following reasons.

FACTS AND PROCEDURAL HISTORY
Mr. Rogers, a mentally disabled, illiterate 36-year-old man, suffered a serious leg fracture as the result of a fall from his bicycle on the night of December 11, 1996. Mr. Rogers was returning to his home on his ten-speed bicycle from a convenience store when he heard a motor vehicle approaching him from behind. He never visually observed the vehicle, yet claimed he was able to estimate its speed at 45 to 50 miles per hour based only upon its sound. The posted speed limit on his street, Prescott Road, was 35 miles per hour. He assumed that the supposed speeding vehicle was a police automobile, because, according to him, police automobiles typically speed on his street. He began to peddle faster to get off the street and onto the adjacent sidewalk. After leaving the roadway at a point adjacent to his neighbor's residence and crossing a grassy shoulder, he rode onto the sidewalk, traveling a significant distance before striking a broken section of the sidewalk in front of his home and falling.
*1101 The sidewalk at issue is a public sidewalk, maintained by the City, its legal custodian. Mr. Rogers filed a petition for damages against the City. In his petition, he alleged that the sidewalk had been broken and left in a defective condition by City employees performing maintenance on a water line sometime in August or September 1996.[1] Trial on the merits was held on September 5, 2003, and after conclusion of the trial, the trial court issued oral reasons for judgment, expressing its finding that the City was forty percent (40%) at fault, the unknown "phantom" motorist was forty percent (40%) at fault, and Mr. Rogers was twenty percent (20%) contributorily at fault. The trial court further found that Mr. Rogers suffered damages consisting of $55,000.00 in general damages and $13,030.60 in medical expenses. The trial court's judgment to that effect was signed on January 29, 2004. The City now appeals.[2]

STANDARD OF REVIEW
An appellate court's review of factual findings in a civil appeal is governed by the manifest error-clearly wrong standard. In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test: (1) the appellate court must find that a reasonable factual basis does not exist in the record for the finding; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, this court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.

DISCUSSION
Louisiana Civil Code articles 2315 and 2316 provide the basic codal foundation for delictual liability for negligence in our state. Louisiana Civil Code articles 2317 and 2317.1 define the basis for delictual liability for defective things. The latter article provides that the owner or legal custodian of a defective thing causing injury or damage is liable "only upon a showing that he knew or, in the exercise of reasonable care, should have known of [the defect], that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." Louisiana Revised Statutes 9:2800 further circumscribes the liability of public entities, including municipalities and consolidated city-parish governments, under La. C.C. art. 2317. At the time of the instant accident,[3] it provided, in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.

*1102 B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
The 1996 amendment enacting La. C.C. art. 2317.1, effective April 16, 1996, abolished the concept of strict liability governed by prior interpretation of La. C.C. art. 2317. See Dennis v. The Finish Line, Inc., 99-1413, 99-1414, p. 5 n. 8 (La.App. 1st Cir.12/22/00), 781 So.2d 12, 20 n. 8, writ denied, 01-0214 (La.3/16/01), 787 So.2d 319; 12 William E. Crawford Louisiana Civil Law Treatise: Tort Law §§ 19.1, 19.2 (2nd ed.1996). A more appropriate term now for liability under La. C.C. arts. 2317 and 2317.1 and La. R.S. 9:2800 might be "custodial liability," but such liability is nevertheless predicated upon a finding of negligence.
The factual basis by which Mr. Rogers supposedly identified the workers as City employees is nowhere apparent in his meager testimony, nor was there any corroborative testimony from other witnesses or other objective, extrinsic evidence supporting his supposed identification. He did not name or otherwise identify any of the supposed City employees, and did not describe any distinctive uniforms, vehicle emblems, documentation, or any other objective criteria to support his identification of the workers as City employees. The testimony of his only other fact witness on this subject was similarly deficient. In fact, the only evidence of the City's supposed role in causing any sidewalk damage is the following testimony from Mr. Rogers:
Q. Okay, and how did that sidewalk get in that condition? Was some work done on it by somebody?
A. Correct. They have some people come there and started working on it and just left it like it was, even  even the front of my yard.
* * *
THE COURT: How long had it been broken prior to you having this accident?
A. I really don't have the slightest idea, your Honor. It was  when they messed it up  when they come in there and dug up in my yard and messed it up and dug over there on the other side of my driveway 
THE COURT: Who is they?
A. I imagine it was the City. They had a line in there messed up. (Emphasis supplied.)
THE COURT: What kind of line?
A. A water line and they come and repaired it and ain't never even come back and fixed the driveway nor fixed that area that was  was damaged in front of my house.
Mr. Rogers's testimony likewise suggests that the persons responsible for the damage were "the water people," who apparently were distinguished from "the City" in his testimony, and whom he had telephoned to investigate high charges on his water bill. After describing that complaint to "the water people" and the work they performed in response to it, Mr. Rogers was cross-examined by the City's attorney as follows:
Q. But you did know that there were people from the City-Parish who had *1103 come out there and worked on your property?
A. Yeah.
It might be argued that the foregoing one-word response to a leading or, more likely, rhetorical question somehow clarifies his prior insufficient testimony and constitutes proof of the City's involvement and knowledge of the defect. We must disagree in both respects. In the first place, Mr. Rogers's initial testimony on direct examination was plainly insufficient on that issue. His one-word response in effect simply reiterated his earlier, insufficient testimony on direct examination, rather than providing new factual grounds of identification or additional explanation.
Secondly, and most importantly, Mr. Rogers's testimony was unequivocal that the sidewalk in front of his home had been broken and "messed up" in other respects prior to the creation of later damaged areas caused by the water line work. There was no testimony or other evidence whatsoever identifying the defective condition causing Mr. Rogers's fall as being an area of "new" sidewalk damage, as found by the trial court, as opposed to an area of prior damage. Likewise, no proof was adduced as to the proximity of the "new" damage and the prior damage to each other, nor of any actual or constructive notice on the part of the City of that prior damage. The City presented the testimony of Gaylen Many, a project engineer in its Information Services Department, who designed and implemented its Citizens Service Division system of complaint documentation. His testimony revealed no documentation of any prior complaints or reports related to sidewalk conditions in the accident location. On these grounds alone, the trial court's finding of liability on the part of the City constitutes manifest error.
In its transcribed oral reasons, the trial court expressed its rationale for finding actual notice to the City as follows:
The court finds from the evidence presented that the City-Parish was on notice. I find that they went out and created this problem with the sidewalk, and they didn't go back and fix it.
I believe that the plaintiff, his testimony  Mr. Rogers has testified that he had previously notified them when a little girl had fallen on her bicycle, and so the court finds that they were on notice, and they failed to make any effort to repair the cite. [sic] (Emphasis supplied.)
We emphasize that the latter finding of fact is clearly wrong from a simple reading of the testimony of both the plaintiff and the City's project engineer, who documented the date of complaint. The other incident indisputably was reported on February 10, 1997, months after the accident at issue.[4]
Based upon our review of the entire trial record, we conclude that the trial court committed manifest error in finding the City of Baton Rouge liable to Mr. Rogers. Even if the plaintiff's vague testimony supposedly identifying the persons performing the water line work as City workers could somehow be accepted as adequate, the requisite proof for liability under La. C.C. art. 2317.1 and La. R.S. 9:2800 is plainly insufficient in the other respects noted, primarily identification of the causative defect as that created by the water line work. Additionally, given Mr. Rogers's own testimony, the trial court's apportionment of contributory fault to him is clearly wrong. When the court of appeal *1104 finds that manifest error of material fact was made in the trial court, it is required, whenever possible, to redetermine the facts de novo from the entire record and render a judgment on the merits. Ferrell v. Fireman's Fund Ins. Co., 94-1252, p. 4 (La.2/20/95), 650 So.2d 742, 745.
The plaintiff not having established the liability of the City, the only viable party against whom judgment could be rendered, the trial court's judgment must be reversed. Thus, it is unnecessary to address the comparative fault of the phantom vehicle's operator and Mr. Rogers, except to emphasize an additional basis for reversal or modification of the trial court's judgment. Given the circumstances of the accident in light of the factors of Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967, 974 (La.1985), the assessment of relative fault as between the phantom vehicle's operator and Mr. Rogers made by the trial court (40% versus 20%) is clearly wrong.
Leaving aside the very serious question of the reasonableness of Mr. Rogers's reaction to a vehicle he never even saw, once he left the roadway, he was in a position of safety and there was no need for him to continue to ride onto and along the sidewalk at the same speed toward the broken areas of sidewalk with which he was familiar. He could easily have slowed or even stopped, and waited to re-enter the roadway after the vehicle had passed. He could simply have stopped or have ridden on the grassy shoulder. As he never even observed the approaching vehicle, he conceivably could simply have slowed and steered his bicycle as far as possible to the edge of the right travel lane of the street and waited for the vehicle to pass. Even if Mr. Rogers were to be given the benefit of every doubt under the circumstances, his fault was at least equal, if not greater, than that of the phantom vehicle's operator.[5]
Although a trial court's determination of credibility is entitled to deference on appellate review, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, a court of appeal may find manifest error even in a finding purportedly based upon a credibility determination. Toston v. Pardon, 03-1747, p. 12 (La.4/23/04), 874 So.2d 791, 800. In summary, this court cannot shirk its duty of appellate review of fact by simply deferring to a trial court's factual determinations because its reasons for judgment are couched in terms of a credibility call. At some point, even a bare transcript is so deficient in terms of quality of evidence that the trial court's error is manifest, even if some credibility determinations must necessarily be made. This is such a case.
There is only one reasonable view of the evidence of liability presented to the trial court, and that view is contrary to the trial court's findings. Thus, the trial court's finding of liability on the part of the City is clearly wrong. It is only human, of course, to sympathize with Mr. Rogers's personal situation and unfortunate injuries. But our courts are courts of law which must endeavor to be impartial and to render judgment in civil actions based upon a preponderance of the evidence and the applicable law, not upon inappropriate considerations such as sympathy. As the *1105 plaintiff, Mr. Rogers, simply failed to meet his burden of proof on the issue of the City's liability in this case, the judgment of the trial court is therefore reversed. The plaintiff, Robert J. Rogers, is assessed with all costs of the proceedings below and this appeal.
REVERSED AND RENDERED.
McCLENDON, J., concurs.
WELCH, J., concurs.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court or, even if a reasonable factual basis exists, that the record as a whole establishes that the finding is clearly wrong. Irion v. State ex rel. Department of Transportation and Development, 98-2616, p. 10 (La.App. 1st Cir.5/12/00), 760 So.2d 1220, 1229, writ denied, 00-2365 (La.11/13/00), 773 So.2d 727. Thus, the reviewing court must do more than simply review the record for some evidence that supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The parties do not dispute that the defective sidewalk was in the custody of the City or that the defect arguably created an unreasonable risk of harm. Mr. Rogers stated that the portion of the sidewalk on which he was injured was located in front of his home. He testified that the sidewalk was already in a bad condition when he moved into his home in 1995 and later "some people" came and further broke up the sidewalk and dug up his yard in order to repair a water line. When asked who the people were that repaired the water line, Mr. Rogers responded, "I imagine it was the city." However, when later asked by defense counsel "[b]ut you did know that there were people from the City-Parish who had come out there and worked on your property," Mr. Rogers definitively answered in the affirmative. The City presented no evidence to refute this assertion. Although seemingly uncertain when first questioned, Mr. Rogers later clarified his answer to cure any doubt as to the identity of the persons who had further damaged the sidewalk upon later questioning by defense counsel.
Although not overwhelming, I believe this evidence was sufficient to meet the burden of proof. Furthermore, as noted herein and observed in the majority opinion, the defective condition of the sidewalk pre-existed the additional damage alleged by Mr. Rogers, which observation could serve as a further basis for attributing liability to the City in this matter, since constructive notice can be established by an obvious state of disrepair existing over a lengthy period of time. See Joseph v. City of New Orleans, 02-1996, pp. 8-9 (La.App. 4th Cir.3/5/03), 842 So.2d 420, 425-426; Hammons v. City of Tallulah, 30,091, pp. 5-6 (La.App. 2nd Cir.12/10/97), 705 So.2d 276, 280-281, writs denied, 98-0407, 98-0440 (La.3/27/98), 716 So.2d 892, 894; but see Boyle v. Board of Supervisors, Louisiana State University, 96-1158 (La.1/14/97), 685 So.2d 1080. Thus, based on this evidence and giving due deference to the findings of the trial court, I would affirm the judgment. Accordingly, I respectfully dissent.
NOTES
[1] Understandably, Mr. Rogers did not assert any liability on the part of the City based upon his speculative identification of the unknown vehicle as a police vehicle.
[2] The plaintiff, Mr. Rogers, also contends in his brief that the trial court committed error in not finding the City 100% at fault in causing his damages, and in failing to award him $100,000.00 in general damages. Not having perfected his own appeal, nor having timely answered the City's appeal, Mr. Rogers cannot be heard to complain about any aspect of the trial court's judgment. See La. C.C.P. art. 2133(A).
[3] The statute has since been amended by Acts 2003, Nos. 725 and 1007.
[4] The plaintiff's counsel likewise misstates that evidence in his brief, despite the fact that he elicited the testimony from his client on direct examination at trial.
[5] On the record before us, considering the tenuous reliability of the testimony relating to the speed of the phantom vehicle, we could easily conclude that Mr. Rogers's negligence was the sole legal cause of the accident.