938 So.2d 730 (2006)
GOD'S GLORY & GRACE, INC.
v.
QUIK INTERNATIONAL, INC., et al.
No. 2005-CA-1414.
Court of Appeal of Louisiana, First Circuit.
June 9, 2006.
Writ Denied October 6, 2006.
*731 John Housan Fenner, III, Baton Rouge, for Appellant.
Clifton O. Bingham, Jr., David A. Peterson, Oats & Hudson, Baton Rouge, for Appellee.
Panel composed of Ad Hoc Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge Ad Hoc.
The Plaintiff, God's Glory & Grace, Inc. (God's Glory), appeals from the trial court judgment rendered in favor of the Defendant, Quik International, Inc. (Quik International), *732 finding that it was not liable, as the franchisor of a local business with which God's Glory contracted, for damages allegedly suffered by it when the contract was breached. For the reasons which follow, we affirm.
God's Glory is a closely held subchapter S corporation owned entirely by Mark Lee and his wife, Glinda Lee. In mid-summer of 1999, the Lees decided to form an internet-based company that would market certain products primarily to the Christianbased buying public. The Lees' business plan included construction of a web site that would sell these products through a "web store." The Lees were interested in hiring someone to design and create a web site and web store which would market commerce greeting cards and link consumers over to their web store. According to the petition, on November 9, 1999, God's Glory entered into a contract with Quik Computer Solutions to design their web site and handle their other computer needs. It is alleged that Quik Computer Solutions was a franchisee of Quik International. Quik International is a foreign corporation, in the business of franchising the "Quik Internet" concept to local internet service providers.
God's Glory contends that it was promised that its web site would be online and functioning by November 12, 1999. After numerous problems and delays, on May 12, 2000, it informed Quik Computer Solutions that it wished to discontinue its services. On February 1, 2001, God's Glory filed this lawsuit for breach of contract, naming as Defendants, Quik International and "Quik Internet of Baton Rouge, a/k/a Quik Computer Solutions."
In its answer, Simpliance Corporation (Simpliance) explained that it was the corporation with which God's Glory contracted, doing business as Quik Internet of Baton Rouge and Quik Computer Solutions, and otherwise denied the allegations in the petition and asserted several defenses. God's Glory thereafter duly amended its petition to name Simpliance as a Defendant.
God's Glory filed a second amending petition, further alleging that Quik International had entered into a franchise agreement with Simpliance, as a franchisee of the Quik Internet concept in the Baton Rouge area. It was alleged that the Quik International web site represented that Quik International provided web site design services for customers of Quik Internet franchisees. It was also alleged that the Lees read and relied on these representations in contracting with Simpliance.
On November 6, 2003, God's Glory filed a motion to dismiss Simpliance and the case went to trial solely against Quik International, the franchisor. On October 7, 2004, following trial and after taking the matter under advisement, the trial court rendered judgment, in accord with written reasons, in favor of Quik International dismissing all claims by God's Glory against it. In her reasons for judgment, the trial court found that Quik International's primary role was to serve as an Internet Service Provider and to provide a location to host the God's Glory web site. Quik International had no contact with God's Glory or the Lees and it did not manage or control its franchisee, Simpliance. God's Glory dealt only with the representatives of Simpliance and never contacted Quik International regarding the actions or inactions of Simpliance. The trial court also found that Quik International was not the alter ego of Simpliance, both companies having different directors, officers, employees, clients and contracts. The trial court found that Quik International did not make any representations to God's Glory upon which the latter could have reasonably relied. The trial court noted that *733 Quik International was not a party to the contract that God's Glory entered into with Simpliance and that much of the information that the Lees found out about Quik International was discovered after they terminated Simpliance and not in contemplation of entering into the contract with Simpliance. Finally, the trial court noted that in the franchise agreement it was clearly stated that Simpliance was an independent contractor and that there was no principle-agency relationship between the parties. Quik International did not give Simpliance the authority to bind it to any contract with a third party. It is from this judgment dismissing its claims that God's Glory appeals. Quik International filed an answer requesting damages for frivolous appeal.
On appeal, God's Glory assigns three errors, the first two addressing trial court errors in the judgment and reasons and the third addressing damages in the event of a reversal. On the merits, in the first two assignments of error God's Glory argues that the trial court erred in dismissing its claims against Quik International based on language in the franchise agreement and a perceived duty on the part of third parties (God's Glory) to investigate the franchisor's contractual liability as provided in the agreement. God's Glory also argues that under agency law Quik International should have been held liable for the authorized acts of its agents.
Quik International argues to the contrary that the trial court judgment was correct. It argues that God's Glory took one sentence from the trial court's reasons for judgment out of context, referencing the trial court's reliance on the terms of the franchise agreement which provided that Quik International was not responsible for the acts of franchisees or their employees. Moreover, absolute liability of a franchisor is not recognized under Louisiana law. Rather, under principal-agency principles, the trial court was correct in ruling that Quik International was not liable to God's Glory for any breach of the contract which God's Glory entered into with its franchisee, Simpliance, based on the findings that Quik International never communicated with God's Glory, or the Lees, it had no control over Simpliance, no common directors, officers or employees, Simpliance had no actual authority to bind Quik International and apparent authority requires manifestation by the principal and reasonable reliance thereon, which were not proven in this case.
It is well settled that an appellate court's review of factual findings in a civil appeal is governed by the manifest error  clearly wrong standard. In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test: (1) the appellate court must find that a reasonable factual basis does not exist in the record for the finding; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rogers v. City of Baton Rouge, 04-1001 (La. App. 1st Cir.6/29/05), 916 So.2d 1099. If the findings are reasonable in light of the record reviewed in its entirety, this court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Rogers, supra. Thus, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883; Rogers, 916 So.2d at 1101.
Although a trial court's determination of credibility is entitled to deference *734 on appellate review, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, a court of appeal may find manifest error even in a finding purportedly based upon a credibility determination. Toston v. Pardon, 03-1747, p. 12 (La.4/23/04), 874 So.2d 791, 800. In summary, an appellate court cannot shirk its duty of appellate review of fact by simply deferring to a trial court's factual determinations because its reasons for judgment are couched in terms of a credibility call. At some point, even a bare transcript is so deficient in terms of quality of evidence that the trial court's error is manifest, even if some credibility determinations must necessarily be made. Rogers v. City of Baton Rouge, 04-1001, p. 9 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1104.
The standard of appellate review for questions of law is simply to determine whether the trial court was legally correct or incorrect. Cangelosi v. Allstate Ins. Co., 96-0159 (La.App. 1st Cir.9/27/96), 680 So.2d 1358, 1360, writ denied, 96-2586 (La.12/13/96), 692 So.2d 375. If the trial court's decision was based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference by the reviewing court. Conagra Poultry Co. v. Collingsworth, 30,155 (La. App. 2nd Cir.1/21/98), 705 So.2d 1280.
In considering the liability of the franchisor, Quik International, to a third party, God's Glory, for the alleged breach of the contract the latter entered into with the franchisee, Simpliance, we must look to the law on agency and mandate. A principal is bound by the authorized acts of his agent. La. C.C. art. 3021. A principal may also be bound by acts of a professed agent acting with "apparent authority." Tedesco v. Gentry Development, Inc., 540 So.2d 960 (La.1989); Dart Distributors, Inc. v. Foti Enterprises, Inc., 271 So.2d 705 (La.App. 1st Cir.1972). As explained by the Supreme Court in Tedesco:
Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent. Restatement (Second) of Agency § 8 (1958); W. Seavey, Law of Agency § 8(D) (1968); F. Mechem, Law of Agency § 84 (4th ed.1952); Comment, Agency Power in Louisiana, 40 Tul. L.Rev. 110 (1965) [hereinafter cited as Comment, Agency Power]. In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person. However, the third person has the same rights in relation to the principal under either actual or apparent authority. Further, apparent authority operates only when it is reasonable for the third person to believe the agent is authorized and the third person actually believes this. Restatement, supra § 8, comments a and c.
There is no express codal or statutory authority for the doctrine of apparent authority in Louisiana. This doctrine of unprivileged agency power, however, is an important part of the modern law of agency. A. Yiannopoulos, Civil Law in the Modern World 88 (1965).
Louisiana courts have utilized the doctrine of apparent authority to protect third persons by treating a principal *735 who has manifested an agent's authority to third persons as if the principal had actually granted the authority to the agent. See Restatement, supra § 8, comment d; Comment, Agency Power, supra: Conant, The Objective Theory of Agency: Apparent Authority and the Estoppel of Apparent Ownership, 47 Neb.L.Rev. 678 (1968). (Footnotes omitted.)
This Court has also explained that "apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated his authority to the agent." Tresch v. Kilgore, 03-0035 (La. App. 1st Cir.11/7/03), 868 So.2d 91; Waffle House, Inc. v. Corporate Properties, Ltd., 99-2906 (La.App. 1st Cir.2/16/01), 780 So.2d 593. The burden of proving apparent authority is on the party relying on the mandate. The third party may not blindly rely upon the assertions of an agent, but has a duty to inquire into the nature and extent of the agent's power. Tresch, supra.
Applying these precepts to the case before us and considering the record in its entirety, we find no error by the trial court in its interpretation or application of the law or in its factual findings and credibility determinations, which we find were reasonably supported by the record.
God's Glory takes issue with the trial court's reference to the franchise agreement between Quik International and Simpliance. The trial court noted that Article 17 of the franchise agreement specifically states that the franchisee was an independent contractor and the franchisor was not responsible for the employees of the franchisee. It also clearly states that there was not an agency or fiduciary relationship between the franchisor and franchisee. The trial court found that Quik International never gave Simpliance the authority to bind it to any contract with a third party for web design work.
Upon review, we find that the trial court's consideration of the franchise agreement and factual finding that Quik International did not give Simpliance authority to bind it to a contract were both relevant and necessary to a determination in the case. As stated above, an agent can bind a principal through either actual authority or apparent authority. The trial court had to first determine whether Simpliance had actual authority to bind Quik International to an agreement with a third party. To make that determination, the terms of the agreement between the franchisor and franchisee had to be considered and a factual finding had to be made. Thus, we find no merit in God's Glory's argument that the trial court improperly dismissed its claims based on the language of the franchise agreement. To the contrary, consideration of the terms of the agreement was necessary for consideration of any claims against Quik International based on the actual authority of Simpliance. Furthermore, we find that the trial court's determination that Quik International did not give Simpliance the actual authority to bind it to any contracts with third parties for web design was amply supported by the record and was not manifestly erroneous.
Ruling out any actual authority of Simpliance to support God's Glory's claims against Quik International, the trial court next assessed liability under the apparent authority doctrine. In doing so, the trial court made several pertinent factual findings. The trial court found that Quik International's primary role as franchisor *736 was to serve as an Internet Service Provider, that is, to provide a location to host the God's Glory web site. Quik International was not a party to the contract with God's Glory and, in fact, had no contact with it. God's Glory only dealt with agents and employees of Simpliance. At no time was Quik International contacted directly by God's Glory.
The trial court also found that Quik International was not the alter ego of Simpliance. Quik International did not participate in the day-to-day operations of Simpliance, or control it. The two companies had different directors, officers, employees, clients and contracts. All of these findings are well supported by the record and are not contested on appeal.
Rather, the basis for God's Glory's claims against Quik International rest on alleged comments and assurances made by Simpliance employees, Mark Perryman (Perryman) and Ken Thurston (Thurston), the logo on their business cards, and information that God's Glory claims to have gathered from Quik International's web site, all of which, it contends, that it relied on in contracting with Simpliance because it believed they were contracting with Quik International.
The record indicates that Simpliance was doing business under the name of Quik Internet of Baton Rouge and Quik Computer Solutions. Quik International is a Nevada Corporation that franchised an internet service provider (ISP) concept under the trade name Quik Internet. The Quik Internet franchise concept was developed to provide web hosting services on a local level while taking advantage of the economies of scale to provide the franchisees with a centralized set of servers upon which the ISP and web hosting services could be provided. In other words, it enabled the franchisees to reduce their costs by not having to acquire servers of their own, allowing them to access the central servers in California that were operated by Quik International.
Perryman acknowledged that part of his sales pitch was to tell customers that he could provide them better web hosting and ISP services because of the availability to him of the centralized servers provided by Quik Internet. Perryman also confirmed that he and Thurston had business cards that they used with the Quik Internet logo on them and that the logo was also displayed on the Quik International web site. The card had the Quik Internet logo on it right above the heading "Computer Solutions." The card in the record had Thurston's name at the top left corner with a Baton Rouge Quik email address. In each lower corner was listed the company name, Quik Internet of Baton Rouge, with a local address and phone number, in the left corner, and the company name, Quik Computer Solutions, with a local address and phone number in the right corner. Nowhere did the card reference Quik International. One could reach the Quik Internet web site from the Quik Internet of Baton Rouge web site. The record also indicates that Quik Internet was listed in the Baton Rouge telephone directory under the heading of Web Site Design.
The Lees testified that they checked and relied on the Quik International web site before entering into the contract with Simpliance. However, Mrs. Lee conceded that she did not know anything about the internet or how to navigate it at the time she contracted with Simpliance, and had to look over her husband's shoulder as he moved about the web sites. While Mr. Lee testified that he relied on representations in the Quik International site before signing the contract with Simpliance, there were discrepancies in the testimony about exactly which pages he viewed before signing the contract. The web site pages filed *737 into the record were from the Quik Internet site. The record also indicates that God's Glory did not make telephone inquiry or any other of Quik International to determine firsthand what support it provided for the customers of its franchisees. The Lees indicated that they knew Quik Internet of Baton Rouge or Quik Computer Solutions was a franchisee of Quik International. Further, despite the Lees' testimony that they were led to believe that they were hiring Quik International when they contracted with Simpliance, when they were having trouble over several months getting their web site running, they did not attempt to contact Quik International about the problems.
The record also contains a page from the Quik Internet site referring to their expertise in web site design. However, Jack Reynolds (Reynolds), an employee, shareholder and founder of Quik International, testified explaining that the web site was intended in part to explain the services Quik International offers to its franchisees and not to customers of the franchisees. This was particularly the case as to the section on "Web Design Solutions." He also explained that the Quik Internet site was available to all franchisees as part of their package. Reynolds noted that it was a matter of the franchisees' discretion as to whether to offer any services beyond the ISP, web hosting and email accounts that are part of the Quik Internet franchise concept.
Following trial, in addition to other factual findings referred to infra, the trial court found that Quik International did not make any promises or representations to God's Glory. The trial court found that Mrs. Lee was inexperienced with computers and the internet at the time Simpliance was hired. Most importantly, the trial court made credibility determinations, finding that much of the information that was learned by God's Glory about Quik International was acquired after it had terminated Simpliance or when it was contemplating the filing of the instant suit. Further, the trial court found that, even if the Lees did believe that promises were made by Quik International, such a belief without inquiry was not reasonable under all the facts and circumstances.
Based on the foregoing, we find no error in the trial court ruling, manifest or otherwise. The burden was on God's Glory to prove the apparent authority of Simpliance to act for Quik International, evidenced by manifestations of Quik International to the Lees, and that their reliance on this apparent authority was reasonable. A review of the entire record indicates, as found by the trial court, that God's Glory did not meet its burden. Considering the record in its entirety, we find a reasonable factual basis for the credibility determinations and factual findings of the trial court and that they were not clearly wrong. We also find that the interpretation and application of the law to these facts was correct.
Accordingly, the judgment of the trial court in favor of Quik International, dismissing God's Glory's case against it, is affirmed. Costs are to be paid by God's Glory. The answer to the appeal filed by Quik International requesting penalties for a frivolous appeal is found to lack merit and is denied.
AFFIRMED.