960 So.2d 242 (2007)
Arnese EARLS and Willie Earls as Natural Tutor of the Minor Child, Quomeshia Earls
v.
Darren W. McDOWELL and State Farm Mutual Automobile Insurance Company.
No. 07-CA-17.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2007.
*245 Thomas E. Campbell, Jacqueline A. Campbell, Metairie, Louisiana, for Plaintiffs/Appellants.
Christopher P. Lawler, Donovan & Lawler, Metairie, Louisiana, for Defendants/Appellees.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
The plaintiffs have appealed the trial court judgment awarding limited medical expenses and general damages in this personal injury lawsuit. For the reasons that follow, we affirm the judgment as amended.
FACTS:
This appeal arises from an accident that occurred on August 9, 2003 when a vehicle driven by the defendant, Darren McDowell, struck the rear of a vehicle driven by the plaintiff, Arnese Earls. Mrs. Earls' daughter, Quomeshia Earls, was in the vehicle with her at the time of the accident. Both Earls sought treatment from a chiropractor, Dr. G.W. Gilmore, for soft tissue injuries. The Earls filed suit against Mr. McDowell and his insurer, Allstate Insurance Company (Allstate). The matter proceeded to trial.
At trial, Mrs. Earls testified that at the time of the accident she was driving a 2001 Dodge Caravan and was stopped at a red light on Loyola Drive at the intersection of 31st Street in Kenner. When the defendant's vehicle struck her van, she heard a big noise and her car moved a couple of feet. Mrs. Earls explained that she was knocked forward inside the vehicle. Pictures of the van she was driving at the time of the accident were introduced and she testified that prior to the accident the van was in "good condition." The pictures revealed damage to the rear tailgate of the van.
Mrs. Earls testified that her husband came to the accident scene and drove them home. When she got home she started to have headaches. She thought it would go away and she took Tylenol and went to bed. Mrs. Earls testified that in the morning she had pain from her neck all the way down her back. She went to the chiropractor the next morning. X-rays were taken and medication was given for the pain. Heat and massage treatments were administered for the pain. Mrs. Earls testified that she continued to visit the chiropractor for five months and was not having any further problems at the time of discharge.
On cross-examination, Mrs. Earls testified that Dr. Gilmore suggested she visit his office for treatment two or three days per week. The defense counsel pointed out gaps in her treatment ranging from one to two weeks in duration. Mrs. Earls explained that when she felt better she *246 "slacked up" on her treatments and thought the pain would go away. She also testified that Dr. Gilmore was on vacation during one of the gaps in treatment.
Quomeshia Earls testified that she was 14 years old at the time of the accident. She explained that as she and her mother were stopped at the red light, they heard a "big bang," which moved the van. She was "jerked" in the van and her neck and back were "bothering" her when she jerked. Quomeshia testified that later that day her back, lower back, and arm were hurting. She sought treatment from Dr. Gilmore who gave her massage and heat treatments. She denied any prior neck and back problems and stated the treatments by Dr. Gilmore helped her pain. She had no further difficulties after her discharge from Dr. Gilmore.
At trial medical reports by Dr. Gilmore for both Mrs. Earls and Quomeshia were admitted into evidence. The report states x-rays and a physical examination were performed and that Mrs. Earls sustained:
(1) acute severe cervical sprain and strain with concomitant paravertebral muscle spasm and attending suboccipital neuralgia (resulting in severe headaches);
(2) Acute severe lumbar sprain and strain with associated deep and superficial muscle spasm;
(3) Acute sprain and strain of the left writs;
(4) Multiple intersegmental vertebral spinal disrelationships (unspecified curvature of the spine).
The report states that specific manipulative procedures were performed and hydrotherapy and massage therapy were used as an adjunct to the manipulation. Dr. Gilmore further stated: "It is my opinion, based on the history as presented by the patient and the above noted examination findings, that the above noted injuries were sustained in the accident of August 09, 2003." The medical bill indicated Mrs. Earls visited Dr. Gilmore from August 11, 2003 until she was discharged on January 24, 2004 for a total of 21 times; the total bill was $1,566.00.
The report for Quomeshia states that a physical examination was performed and x-rays were taken. Quomeshia sustained the following injuries:
(1) Acute severe cervical sprain and strain with associated deep and superficial muscle spasm, myofascitis and radiculitis radiating the trajectory of the right brachial plexes;
(2) Acute moderate lumbar sprain and strain;
(3) Acute sprain and strain of the right arm;
(4) These sprains and strains are accompanied by ligamentous instability, myofascitis and localized evidence of nerve root irritation.
Treatments consisting of spinal manipulation, hydrotherapy, and massage therapy were rendered to Qyomishia starting August 11, 2003 and ending January 24, 2004, for a total of 16 visits. Her total bill was $1,225.00. The report states: "It is my opinion, based on the history as presented by the patient and the above noted examination findings, that the above noted injuries were sustained in the accident of August 09, 2003."
At the conclusion of trial, the judge took the matter under advisement. Two days later he rendered judgment awarding Mrs. Earls special and general damages in the amount of $601.00 and special damages to Quomeshia in the amount of $200.00. This timely appeal followed.
LAW AND DISCUSSION:
On appeal, plaintiffs contend the trial court committed manifest error and quotes *247 from the reasons for judgment, which state:
On the witness stand, the court found neither Arnese or Quomeshia to be convincing about being injured or experiencing pain. There was no testimony as to treatment of the alleged wrist and arm injuries. The accident was minor, and this court finds that Arnese experienced only minor discomfort for a short period of time, and that Quomeshia was not injured at all. In fact, Quomeshia repeatedly hesitated during testimony and seemed to be looking toward her mother for clues or prompting. While plaintiffs produced bills for massage and hydrotherapy, plaintiffs failed to bear their burden of proving that the majority of those treatments were related to an injury or necessitated by the accident. Notwithstanding, both plaintiffs were entitled to be X-rayed and examined for injuries after the accident.
Plaintiffs contend that the trial court ignored plaintiffs' uncontroverted testimony, which is supported by the medical reports of Dr. Gilmore. Plaintiffs contend the medical reports were stipulated to by the parties and, therefore, the court is bound by this evidence. The record reflects that when the reports were introduced, the trial judge asked "So, the stipulation is that those exhibits come into evidence?" Plaintiffs' counsel answered affirmatively. Accordingly, we find that the parties stipulated that the medical records be admitted into evidence.
In rendering judgment, the trial judge found neither Mrs. Earls or Quomeshia "to be convincing about being injured or experiencing pain." He found Mrs. Earls "experienced discomfort for only a short period of time" and that Quomeshia was not injured at all. The judgment further states that while plaintiffs produced bills for medical treatment they failed to "bear their burden of proving that the majority of those treatments were related to an injury or necessitated by the accident." The trial judge explained that he awarded Mrs. Earls general damages of $300.00 and special damages for treatment on August 11th and August 15th; the special damage award to Quomeshia were for x-rays and examination on August 11th.
The standard of appellate review of a trial court's factual findings is well settled and has long been established in this state: A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). An appellate court cannot shirk its duty of appellate review of fact by simply deferring to a trial court's factual determinations because its reasons for judgment are couched in terms of a credibility call. Rogers v. City of Baton Rouge, 04-1001 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1104, writ denied, 05-2022 (La.2/3/06), 922 So.2d 1187. This Court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports *248 the judgment rendered by the trial court. See, LSA-Const. Art. 5, section 10(B); Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742.
Proof by a preponderance of the evidence is defined as taking the evidence as a whole, the fact to be proved is more probably than not. Fuller v. Wal-Mart Stores, Inc. 519 So.2d 366, (La.App. 2nd Cir.1988). Uncontroverted evidence should be taken as true to establish a fact for which it is offered absent any circumstances in the record casting suspicion as to the reliability of this evidence and sound reasons for its rejection. Id.
Our review of the entire record and the evidence submitted indicates that the trial judge erred in finding that the plaintiffs failed to prove they were injured, experienced pain, and that their medical treatment was related to the accident. Rather, we find the evidence in the record to the contrary: the reports by Dr. Gilmore on both plaintiffs state that in his opinion, the plaintiffs' injuries described in his report were sustained in the accident of August 9, 2003. The reports list the injuries and the treatment for the injuries. These reports are uncontroverted, the trial judge gave no reason for rejecting these reports, nor does our review of the record reveal any circumstances that would cast doubt as to the reliability of these reports. Thus, we find the trial judge committed manifest error in finding the plaintiffs failed to prove the medical treatment they received was necessitated by the accident. When a plaintiff alleges that they have incurred medical expenses as a result of injuries suffered in an accident and that treatment is supported by a bill, that evidence is sufficient to support an award for past medical expenses unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. Stiltner v. National Union Fire Insurance Company, 2000-2230 (La. App. 4 Cir. 10/3/01), 798 So.2d 1132. In the absence of bad faith, it is error for the trier of fact to fail to award the full amount of medical expenses that are proven by a preponderance of the evidence that were incurred as a result of an accident. Simon v. Lacoste, 2005-550 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102. We find no contradictory evidence and nothing in the record to cast suspicion on the medical bills submitted by plaintiffs. Accordingly, the judgment of the trial court is amended to include the total amount of medical expenses incurred by plaintiffs for the injuries sustained in this accident.
We now turn to the general damage award rendered to Mrs. Earls and the lack of a general damage award rendered to Quomeshia. Mrs. Earls testified that she had headaches and pain in her neck, back, and wrist after the accident. She sought treatment from Dr. Gilmore for these complaints. Dr. Gilmore's report states Mrs. Earls complained of pain in the neck, head, lower back, left wrist, and shoulders. His examination revealed objective findings of injury, i.e. loss of the normal cervical lordotic curvature and muscle spasms. The medical bill indicates Mrs. Earls visited Dr. Gilmore five times in August, five times in September, three times in October, three times in November, twice in December and three times in January for a total of 21 visits. The bill indicated there were gaps in the treatment lasting anywhere from two to three weeks. In explaining the gaps in her treatment, Mrs. Earls testified that she went to Dr. Gilmore when the pain was there, but did not go when the pain got better. She testified that her pain was completely gone at the time of trial. The medical report was uncontroverted and we find nothing in the record to cast doubt upon the report or the bill.
*249 Quomeshia also testified as to the pain she experienced after the accident. Although she could not recall the duration of the pain, she testified that she went to Dr. Gilmore for treatments and the treatments helped the pain. Although Quomeshia did not go into significant detail about her pain, her testimony is uncontroverted. We find nothing in the record to controvert her testimony regarding her pain. While we acknowledge the trial court's comment regarding Quomeshia looking at her mother during her testimony, we do not find the fact that a child looking at her mother during her testimony sufficient in the absent of any other circumstances to rebut the medical evidence of injury and treatment. The report by Dr. Gilmore states that Quomeshia complained of pain in the neck, low back, and right arm, as well as stiffness throughout the spine. There are objective findings of injury on the exam, i.e. loss of normal cervical lordotic curvature and ligamentous instability. The medical bill indicates Quomeshia visited Dr. Gilmore four times in August, three times in September, three times in October, three times in November, twice in December and twice in January for a total of 16 visits. The medical report was uncontroverted and we find nothing in the record to cast doubt upon the report or the bill. Accordingly, we find the trial court erred in finding Quomeshia failed to carry her burden of proving her injury and resulting pain.
Having determined that the trial judge committed manifest error in the finding Mrs. Earls was injured and experienced pain for only a short time, we find the general damage award of $300.00 to be abusively low. When the appellate court determines that the trier of fact abused its discretion in assessing the amount of damages, the appellate court must examine prior awards to determine the highest or lowest point that is reasonably within the trier of fact's discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). Since reasonable persons frequently disagree about the measure of general damage in a particular case, the court must look at the effect of the particular injury to the particular plaintiff under the particular circumstances. See, Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The severity and duration of the injured person's pain and suffering are the primary considerations in assessing general damages. Francis v. Brown, 95-1241, (La.App. 3 Cir. 3/20/96), 671 So.2d 1041. An appellate court may raise the award to the lowest reasonable amount or reduce it to the highest reasonable amount, only if articulable reasons are found to show that a reasonable trier of fact could not have made the award under all of the circumstances of the case. Williams v. Maritime, Inc., 04-625 (La. App. 5 Cir. 11/30/04), 889 So.2d 1055, writ denied, 04-3226 (La.3/11/05), 896 So.2d 72.
In Perry v. Anderson, XXXX-XXXX (La. App. 4 Cir. 1/12/00), 751 So.2d 374, the plaintiff suffered neck and pack pain in an automobile accident. He underwent eight months of treatment for these injuries and testified that he continued to have pain for three months following his discharge. The appellate court awarded plaintiff $5,000.00 in general damages. In Mannina v. Wal-Mart Stores, Inc., 99-1102, (La.App. 5 Cir. 2/29/00), 757 So.2d 98, this Court found the trial court's award of $8,500.00 in general damages for a ten month soft tissue neck injury was adequate. Based on the above cited cases, we find the lowest amount of general damages a reasonable trier of fact could have awarded to Mrs. Earls for the injuries sustained in this accident is $4,000.00.
*250 Likewise, having determined the trial court erred in failing to award general damages to Quomeshia using the above cited cases as a guideline, we award $3,000.00 in general damages, noting that Quomeshia had fewer visits to Dr. Gilmore over the same length of time as her mother and that Dr. Gilmore described her injuries as being more moderate than severe. This is the lowest amount of general damages a reasonable trier of fact could have awarded under the facts and circumstances of this case.
Finally, the plaintiffs contend the trial court erred in denying plaintiffs' court costs. Louisiana C.C.P. art.1920 provides that the trial court may render judgment for costs against any party. Generally, the prevailing party is not assessed with costs, unless he needlessly incurred additional costs or engaged in some conduct, justifying the imposition of costs against him. Law Offices of Robert M. Becnel v. Ancale, 02-285 (La.App. 5 Cir. 9/30/02), 829 So.2d 573. Additionally, C.C.P. art. 2164 grants the appellate court discretion to assess costs in the interest of equity. Since our de novo review of this case led to the conclusion that the trial court erred in not awarding the full amount of medical expenses incurred by plaintiffs and abused its discretion in its award of general damages to Mrs. Earls and in failing to award general damages to Quomeshia, we assess all costs in the trial court and on appeal to the defendants.
CONCLUSION:
For the foregoing reasons the judgment of the trial court is affirmed as amended. Judgment is hereby rendered in favor of Arnese Earls and against Allstate Insurance Company for general damages in the amount of $4,000.00 and special damages in the amount of $1,566.00. Judgment is rendered in favor of Arnese and Willie Earls as natural tutors of their minor daughter, Quomeshia Earls, and against Allstate Insurance Company for general damages in the amount of $3,000.00 and special damages in the amount of $1,225.00. In addition, Allstate Insurance Company is casts with all costs in connection with these proceedings.
AFFIRMED AS AMENDED.