STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-308

LAURA D. ROZAS

VERSUS

PROGRESSIVE INSURANCE COMPANY, ET AL.

************

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 68,196-A
HONORABLE J. LARRY VIDRINE, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

Ian A. MacDonald
Longman Russo
600 Jefferson Street, Suite 1600
Post Office Drawer 3408
Lafayette, Louisiana 70502-3408
(337) 262-9000
Counsel for Defendants/Appellants:
    A. Bruce Rozas and
    Progressive Security Insurance Company

Kelly P. Tate
1212 East Street
Post Office Drawer 280
Mamou, Louisiana 70554-0280
(337) 468-5271
Counsel for Plaintiff/Appellee:
    Laura D. Rozas

**GENOVESE, Judge.**

Defendant, Progressive Security Insurance Company (Progressive), appeals the trial court's damage award of $50,000.00 in favor of Plaintiff, Laura D. Rozas. After thorough consideration of the record and applicable law, we affirm the judgment of the trial court.

## FACTS

This lawsuit arises out of a motorcycle accident that occurred on September 5, 2005, near Walla Walla, Washington. Mrs. Rozas was a passenger on a motorcycle being driven by her husband, Defendant A. Bruce Rozas. According to her petition for damages, Mr. Rozas "attempted to leave the traveled hard-surfaced portion of the highway and park unto the shoulder[;]" however, when Mr. Rozas realized that the surface was not level "he immediately attempted to stop, but the surface was covered with loose 'pea' gravel, and in doing so he used only the front brake, instead of only the back brake, which caused the motorcycle to fall violently dropping petitioner to the ground and causing her injury." Mrs. Rozas's petition further asserted that:

> The violent dropping of said motorcycle slammed [her] unto the ground without notice or opportunity to brace or "break" the fall and, as such, caused her such damage that she now suffers a "frozen shoulder" which we [sic] require extensive medical treatment, including but not limited to physical therapy and acupuncture in order to regain full and unrestrictive use thereof.

A bench trial took place on November 6, 2007, after which the trial court took the matter under advisement and permitted the parties to file post-trial memoranda. On January 18, 2008, the trial court rendered Written Reasons for Judgment wherein it declared that Mrs. Rozas was entitled to the limits of Progressive's policy in the amount of $50,000.00. Judgment to this effect was signed on February 13, 2008. Progressive appeals.

1

## ASSIGNMENTS OF ERROR

Progressive contends that:

1.  The trial court erred in awarding [Mrs.] Rozas damages for injuries to her left shoulder when the evidence establishes she injured her right shoulder, if she sustained any injury at all.

2.  The trial court erred in awarding $50,000.00 for injuries which resolved within six weeks.

## LAW AND DISCUSSION

### *Shoulder Injury*

The standard of appellate review of a trial court's factual findings is well settled and has long been established in this state. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Earls v. McDowell*, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242, citing *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Earls, supra,* citing, *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

An appellate court cannot shirk its duty of appellate review of fact by simply deferring to a trial court's factual determinations because its reasons for judgment are couched in terms of a credibility call. *Earls, supra,* citing, *Rogers v. City of Baton Rouge*, 04-1001 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1104, *writ denied*, 05-2022 (La.2/3/06), 922 So.2d 1187. This Court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. *Earls, supra,* citing, LSA-Const. Art. 5, section 10(B); *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La.2/20/95), 650 So.2d 742.

*Boxie v. Smith-Ruffin*, 07-264, 07-265, pp. 6-7 (La.App. 5 Cir. 2/6/08), 979 So.2d 539, 545.

Progressive contends that the testimony given by Mrs. Rozas is suspect. Specifically, Progressive questions whether Mrs. Rozas suffered any injury following the September 5, 2005 accident. Progressive argues that Mrs. Rozas's testimony is unreliable as to which shoulder she allegedly injured and as to when she subsequently sought treatment therefor. It also contends that Mrs. Rozas did not mention a left shoulder injury when treated by Drs. Oscar Rodriguez and Elemer Raffai in the weeks following the accident and that this supports its assertion that she did not injure her left shoulder on September 5, 2005, nor did her "frozen shoulder" result from the accident.

Mrs. Rozas testified that, immediately after the accident, she did feel pain in her left arm and shoulder. Though both she and Mr. Rozas did drive themselves to a hospital after the accident, Mrs. Rozas testified that she ultimately opted not to be evaluated and/or treated at the hospital because she was more concerned about the extent of her husband's injuries.[1]

Mrs. Rozas testified that she saw her internist, Dr. Oscar Rodriguez, on September 13, 2005, for a follow-up visit for the treatment of her cholesterol problem. Mrs. Rozas explained that she did not report experiencing pain in her left shoulder to Dr. Rodriguez because she was seeing him for treatment of her pre-existing cholesterol problem, not for treatment of her shoulder.

According to Mrs. Rozas, on September 25, 2005, she brought her husband for an appointment with Dr. Elemer Raffai, an orthopaedist. While there, Mr. Rozas urged Mrs. Rozas to share with Dr. Raffai her complaints about her shoulder pain; however, she did not seek actual treatment until April of 2006, due to her undivided

---

[1]Mr. Rozas suffered a broken ankle which required surgery.

3

devotion to caring for Mr. Rozas. Mrs. Rozas was then diagnosed with having a "frozen" left-shoulder. Mrs. Rozas testified that she received physical therapy through June of 2006; however, once Progressive would no longer pay for her treatment with Dr. Raffai, she resorted to doing at-home exercises and eventually sought help from an acupuncturist from July 2006 to December of 2006.

The evidence indicates that Mrs. Rozas began treatment with Dr. Raffai on September 27, 2005, and presented with complaints of "right shoulder pain." Dr. Raffai diagnosed Mrs. Rozas with "right shoulder sprain" and treated her with a cortisone injection and prescriptions for anti-inflammatory and pain medications. Two weeks after her initial visit, Mrs. Rozas returned to Dr. Raffai for a follow-up visit on October 11, 2005. Dr. Raffai testified that Mrs. Rozas was "doing better with her scapula pain. The shot helped."

Mrs. Rozas returned to Dr. Raffai on April 26, 2006, "having pain in her left shoulder." Dr. Raffai testified that he diagnosed Mrs. Rozas as having "a frozen shoulder" which he defined as being "a diagnosis where the shoulder starts developing scar tissue after a trauma to where there's actual limitation and range of motion and movement and constant, or on-and-off pain in the shoulder." Mrs. Rozas was treated by Dr. Raffai with a cortisone injection, anti-inflammatory medication, and physical therapy. Dr. Raffai testified that he attributed Mrs. Rozas' left shoulder injury, and subsequent frozen shoulder, to the September 5, 2005 motorcycle accident. Dr. Raffai's medical records contain a document entitled "Addendum to Insurance Company" dated May 11, 2006, in which Dr. Raffai wrote:

> I do believe the frozen shoulder has been caused by the motor vehicle
> accident in which she injured it. It has been getting worse ever since
> and that was about a year and a half ago. It's getting worse. It is very
> stiff. She's in need of therapy. I would like to precert some physical

therapy for her.

Dr. Raffai testified that he was referring to the September 5, 2005 motorcycle accident in the aforementioned document. The medical records in evidence indicate that Mrs. Rozas was treated by Dr. Raffai from September 27, 2005 through June 8, 2006, and that Mrs. Rozas received physical therapy on her left shoulder on twenty-four occasions from May 15, 2006 through July 10, 2006.

In its written Reasons for Judgment, the trial court declared:

> The combined testimony of both Mr. and Mrs. Rozas along with the testimony of the medical care providers, particularly Dr. Raffia [sic], has this Court convinced that the problems which Mrs. Rozas has been living with for in excess of two years were and are caused by the motorcycle accident outside of Walla Walla[,] Washington.

We recognize that the trial court is afforded great discretion where conflict exists in testimony in making reasonable evaluations of credibility of the witness and reasonable inferences based on the evidence. *Leal v. Dubois*, 00-1285 (La. 10/13/00), 769 So.2d 1182. Based on our review of the record and the applicable law, we find no clear or manifest error in the trial court's determination that Mrs. Rozas's left shoulder injury was a consequence of the September 5, 2005 motorcycle accident. The only significant medical evidence presented was that of Dr. Raffai. There was no cogent countervailing medical evidence which either disproved the medical diagnosis rendered by Dr. Raffai nor refuted the testimony of Mrs. Rozas. Accordingly, our thorough review of the record in this matter reveals that the evidence is supportive of the trial court's finding that Mrs. Rozas did, in fact, injure her left shoulder and that she had valid complaints referable to injuries received in the accident made the subject of this lawsuit.[2]

---

[2]Plaintiff's Motion for Partial Summary Judgment on Liability was granted by the trial court on October 22, 2007; thus, the issue of causation is not before this court on appeal.

***Damage Award***

In *Andrus v. State Farm Mutual Automobile Insurance Co.*, 95-801, p. 8 (La. 3/22/96), 670 So.2d 1206, 1210 (citations omitted), the supreme court stated:

> In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion.
>
> Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, *in either direction*, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

Progressive contends that the trial court's $50,000.00 damage award to Mrs. Rozas is an abuse of discretion. In its appellate brief, Progressive declares "[i]n this instance the evidence established that if [Mrs.] Rozas sustained any injury it was to her right shoulder. She saw Dr. Rodriguez once and Dr. Raffai twice for treatment before declaring herself pain free on October 25, 2005." Having addressed the trial court's determination that Mrs. Rozas sustained an injury to her left shoulder, we do not find merit in Progressive's argument that Mrs. Rozas is only entitled to damages for a two-month injury.

Mrs. Rozas was injured in September of 2005. She received medical treatment which comprised of physical therapy and acupuncture from April through December of 2006. Mrs. Rozas continued to have shoulder pain through the date of trial, some twenty-six months after the accident at issue herein. For these reasons, we find no

manifest error, and the trial court was not clearly wrong in its damage award to Mrs. Rozas; thus, we affirm the judgment of the trial court.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.  Costs of this appeal are assessed against the Defendant, Progressive Security Insurance Company.

**AFFIRMED.**