COOKS, Judge.
|3On May 14, 2012, Calvin Joseph Gui-dry, Jr. was operating his 2004 Chevrolet pickup truck and traveling north on Louisiana Highway 339 at its intersection with the Louisiana Highway 14'By Pass In Er-ath, Louisiana. His sister, Kimberly Gui-dry, was a guest passenger. • At the same time, Carolyn Bore! was operating her 2008 Mercury Marquis and approaching the same intersection. When the light at the intersection turned green, both the Guidry vehicle and Borél vehicle began to pass through the intersection.
As the two vehicles proceeded, Karl Credeur, who was driving a 2006 Dodge Caravan owned by his employer, Lafayette Health Ventures, Inc. (hereafter LHV), ran the red light and Collided with the Borel vehicle, which then collided with the Guidry vehicle. Mr. Credeur was in the course and scope of his employment with LHV at the time of the accident. '
Both Calvin Guidry and Kimberly Gui-dry were allegedly injured as a result of the accident. Kimberly was taken from the scene by ambulance to Abbeville General Hospital. She complained of moderate pain in her lower back and knee pain. X-rays were performed, she was. placed in a cervical collar, and was prescribed medication. She was told to return if symptoms did not alleviate or if they worsened.
Kimberly subsequently sought treatment with Dr. Roland Miller,- an orthopedic surgeon in Abbeville, complaining of constant back pain and some radiating pain into her legs. Dr. Miller ordered an MRI which showed a minimal L-5 annular ■bulge and a small focal right paracentral disc protrusion containing an annular fissure at L5-S1. Dr. Miller referred Kimberly to Dr. Mary Cory for epidural steroid injections.
14Kimberly also sought treatment from Dr. David Wyatt, an orthopedic surgeon. Dr. Wyatt testified' her initial complaints were low back, right hip and knee pain. Dr. Wyatt believed the injections Kimberly received were to reduce the inflammation she suffered from arthritis. Dr. Wyatt noted Kimberly had pre-existing arthritis, but that her condition was aggravated by the injuries she suffered in the accident.
Kimberly also was treatéd by Dr. John Martin, who is an anesthesiologist and pain management specialist. He treated Kimberly based on her' complaints of pain she attributed to the automobile accident.
Defendants had Kimberly examined by Dr. John Budden, an orthopedic surgeon. Dr. Budden had no objection to the radiologist’s finding that. Kimberly suffered from an’L6-Sl disc condition with an.annular tear. Dr. Budden opined that Kimberly suffered from pre-existing degenerative conditions in both her lumbar spine and her knee, but he felt these conditions were aggravated by the accident.
Kimberly and Calvin, filed a petition for damages based on the injuries they suffered as a result of the accident. Named as defendants were Mr. Credeur, LHV, and its liability insurer, QEB Specialty Insurance Company. It was asserted in the petition that damages were in excess of $50,000.00, thus entitling them to a jury trial. Prior to trial, Calvin settled his case against the defendants.
At the commencement of trial,. it was stipulated that Mr. Credeur was in the course and scope of his employment at the time of the accident, and was solely at fault in causing the accident. Defendants also *4 stipulated to the authenticity of medical expenses of Kimberly in the amount of $26,244.22, but reserved their right to dispute causation.
|r)At trial, Kimberly presented the deposition testimony of her treating physicians, Dr. Miller, Dr. Wyatt and Dr. Martin. Defendants argued to the jury that Kimberly’s doctors could not agree as to the source and/or recommended treatment for Kimberly’s complaints of pain. Kimberly asserted claims for future medical expenses, as well as past and future wage loss.
Kimberly testified she was hurt in the accident, had pain as a result of the accident, and had not been in pain prior to the accident. Despite acknowledging pre-ex-isting conditions in her back and knees, Kimberly maintained she was nevertheless not in pain prior to the accident. Kimberly’s physicians testified in their depositions that the accident aggravated her pre-exist-ing conditions.
Kimberly also called Glenn Hebert, a licensed vocational rehabilitation counsel- or. Mr. Hebert stated that Kimberly was not a candidate to return to work at this time, finding she was temporarily, totally disabled. Kimberly worked as a sitter, assisting elderly and/or infirmed patients in their home. He testified she would not likely be a candidate for work until she underwent corrective back surgery. Defendants presented the testimony of Ted Deshotels, also a vocational rehabilitation counselor, who disagreed with the findings of Mr. Hebert, stating he did not find a future loss of earnings capacity was warranted. He believed Kimberly, could return to employment. On cross-examination, Mr. Deshotels noted it might be problematic for Kimberly to return to work, but premised that opinion on her cardiac condition rather than the injuries allegedly suffered in the accident.
->In conjunction with Mr. Hebert’s testimony, Kimberly presented the testimony of an economist, John Theriot, who stated, ■at the time of trial, she had past lost income of $40,764.00. Mr. Theriot noted the amount reached by Defendants’ economist, who was not called at trial, was approximately $52,000.00. UMr. Theriot also testified Kimberly’s loss of future income was approximately $170,000.00.
At the conclusion of the three-day trial, the jury, returned a verdict finding Kimberly was not entitled to any damages as a result of the accident. Kimberly subsequently filed a motion for new trial, contending the jury’s verdict was clearly contrary to the evidence and law. The trial court, although noting the jury’s verdict “was rather harsh,” denied the motion for new trial. This appeal followed, wherein Kimberly asserts the following assignments of error:
1. The jury committed manifest error in finding that [she] was not injured in the motor vehicle accident made the cause of this lawsuit, and thus erred in failing to award damages.
2. The trial judge committed legal error in failing to grant the motion for new trial when all evidence was to the contrary, which all indicated that she was injured in the motor vehicle accident.
ANALYSIS
This court recently in Cole v. Allstate Ins. Co., 07-1046, p. 2 (La.App. 3 Cm. 6/5/08), 987 So.2d 310, 312, writ denied, 08-1463 (La.10/31/08), 994 So.2d 535, discussed the appellate standard of review for factual determinations as follows: *5 ing of fact in the absence of “manifest error” or unless it is “clearly -wrong.” Our supreme court set forth a two-part test for the reversal of a factfinder’s determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for. the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Earls v. McDowell, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242, citing Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993). On appeal, the. issue to, be resolved is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Earls, supra, citing, Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
*4 The standard of appellate review of a trial court’s factual findings is well settled and has long been established in this state. A court of appeal may not set aside a trial' court’s or a jury’s find-
*5 [7An appellate court cannot shirk its duty of appellate review of fact by simply deferring to a trial court’s factual determinations because its reasons for judgment are couched in terms of a credibility call. Earls, supra, citing, Rogers v. City of Baton Rouge, 04-1001 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1104, writ denied, 05-2022 (La.2/3/06), 922 So.2d 1187. This Court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. Earls, supra, citing, LSA-Const. Art. 5, section 10(B); Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742.
Proof by a preponderance of the evidence is defined as taking the evidence as a whole, the fact to be proved is. more probably than not. Earls, supra, citing, Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2nd Cir.1988). Uncontroverted evidence should be., taken as true to establish a fact for which it is offered absent any circumstances in the record casting suspicion as to the reliability of this evidence and sound reasons for its rejection. Id.
Boxie v. Smith-Ruffin, 07-264, pp. 3-4 (La.App. 5 Cir. 2/6/08), 979 So.2d 539, 545.
Kimberly argues she was entitled to a presumption that her injuries were caused by the accident. Defendants counter that the evidence reveals Kimberly was not in good health prior to the accident, and thus, any current injuries cannot be presumed to be caused by the accident. Louisiana jurisprudence has long recognized that when a person was in good health prior to an accident, and symptoms appear after the accident, that person’s injuries are presumed to have resulted from the accident. Housley v. Cerise, 579 So.2d 973 (La.1991); Bernard v. Hartford Insurance Co., 09-71 (La.App. 3 Cir. 6/3/09), 12 So.3d 1098, writ denied, 09-1524 (La.10/9/09), 18 So.3d 1285; Stoll v. Allstate Ins. Co., 11-1006 (La.App. 5 Cir. 5/8/12), 95 So.3d 1089; Munch v. Backer, 10-1544 (La.App. 4 Cir. 3/23/11), 63 So.3d 181; Thomas v. Comfort Center of Monroe, LA, Inc., 10-494 (La.App. 1 Cir. 10/29/10), 48 So.3d 1228; Edwards v. LCR-M Corp., Inc., 41,125 (La.App. 2 Cir.7/12/06), 936 So.2d 233. A plaintiff is entitled to application of the Housley presumption of causation if three elements are met: 1) the person was in good health prior to the accident; 2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and 3) there is a reasonable possibility of a causal *6 connection between the accident and the disabling condition. Housley, 579 So.2d 973. The evidence does not establish Kimberly was in “good health”:prior to the accident. She had pre-existing conditions involving her back, knee and heart. Further, many of the symptoms, which Kimberly argues only occurred after the accident, the record shows existed, albeit to some lesser degree, prior to the accident. The medical experts in this case, even the ones called by Kimberly, testified she sustained an “aggravation” to conditions which predated the accident. Under the circumstances, at least two of the three elements required for the Housley pre-sumptionwere not established by Kimberly and application of the presumption in this case is not appropriate.
Of more relevance in this case, is the well-established principle that “a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct,” and the trier of fact is responsible for determining what damages, if any, were caused by the accident. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). As will be set out in detail, the medical testimony in this case was unequivocal that Kimberly suffered an aggravation of preexisting conditions ás a result of the accident in question. Thus, under the law, such an aggravation is compensable, and the jury erred in wholly disregarding the testimony 'of all the doctors in this case who concurred that Kimberly suffered such an aggravation as a direct result of the accident.
|flKimberly notes all three physicians who treated her, Dr. Martin, Dr, Wyatt and Dr. Miller, agreed the problems she complained of arose out of or were aggravated due to the accident in question. Of even greater significance, Kimberly points out that Dr. Budden,' the doctor who Defendants hired to examine her, also found the accident caused an aggravation of her pre-existing problems. While being asked his opinion by counsel for Defendants, Dr. Budden stated: '
From 'reviewing all the reports I had, the x-rays, examining the patient, I think she possessed some pre-existing degenerative changes affecting her lumbar spine and affecting her knee, which is common for á person in her mid forties to late forties; that’s a[1] common finding. And Tdon’t think that the accident caused any structural damage to either of those two areas, but I think it aggravated the underlying arthritic changes that those areas possessed. (Emphasis added).
Dr. Budden went on to state that, with appropriate treatment, such symptoms will normally respond favorably within six months, time. Later in,his testimony, Dr. Budden specifically stated he “believed that she did injure her right knee ..., [that] she contused the knee and she probably aggravated the underlying degenerative arthritis...” He noted the knee problems, similar to the back problems, “should have responded” within six months. Dr, Budden also stated “the treatment recommendations [by Dr. Miller] were timely and warranted.” Dr. Miller’s treatment recommendations included placing Kimberly in physical therapy and ordering two epidural steroid injections. Dr. Budden disagreed, however, with Dr. Wyatt’s recommendation to perform rhizo-tomies on Kimberly, finding it was unnecessary as the lumbar MRI did not show any pressure on any of the nerve roots.[1]
*7 Defendants point to the fact that Kimberly, in the history she provided to Dr. Budden, did not disclose past problems with her back and knees, including being | ^involved in an accident approximately twenty years ago. While this failure may have influenced the jury’s assessment of Kimberly’s credibility, we note Dr. Bud-den’s medical conclusions were made with full knowledge of these pre-existing problems.
Defendants argue that Kimberly’s credibility, or lack of credibility, was. the key factor which moved the jury to find she sustained no damages as a result of the accident. It may very well be true the jury relied entirely on Kimberly’s lack.pf credibility, as suggested by the defense, in rejecting her claims altogether. But “credibility determinations”. alone do” not preclude a review of the jury’s verdict on appeal. We must determine whether , the proven facts in evidence provided a reasonable basis for the jury’s verdict.
There is no question that an accident occurred involving a vehicle in which Kimberly was riding as a guest passenger. Calvin Guidry testified the vehicle he was driving, and in which Kimberly was riding in as a guest passenger, was struck by the Borel vehicle after it collided with the. vehicle driven by Mr. Credeur. Damage to the Guidry vehicle was incurred from the middle of the bumper all the way to the passenger side of the vehicle. The estimate in the record revealed the vehicle sustained approximately $2,200.00 in .damages. The pictures established the majority of the damage to the vehicle occurred on the passenger side, which was the side Kimberly was seated. The bumper also had to be pried from the tire to make the vehicle drivable. Kimberly was taken from the scene by ambulance to the Abbe-ville General Hospital emergency room complaining of pain' in hér lower back and knee.[2]
In All the medical evidence supports a finding that Kimberly’s pre-existing conditions were aggravated as a'result of the accident, The jury’s zero damages award under these circumstances was not reasonable nor is it legally sustainable. The jury therefore was manifestly erroneous arid clearly wrong in finding Kimberly was not entitled to any damage award.
Because the, validity of %e lower court judgment is interdicted by error, we must perform an independent ,de novo review of the complete record and exercise our own discretion in fixing, the appropriate general and special damages awards for the injuries sustained by Kimberly. Suhor v. Gusse, 388 So.2d.755 (La.1980).

I. General Damages,

In her petition, Kimberly asserted' a claim for general- damages for her pain and suffering. General damages include pain and suffering, inconvenience, the loss of physical enjoyment, and other losses of life, or lifestyle that eannot be definitively measured in monetary terms. McGee v. A C and S, Inc., 05-1036 (La.7/10/06), 933 So.2d 770; Montgomery v. Opelousas Gen’l Hosp., 546 So.2d 621 (La.App. 3 Cir.1989). “There is no mechanical rule-for determining general damages and the facts and circumstances of each case must control.” Bailey v. Leblanc, 14-267, p. 8 (La.App. 3 Cir. 11/12/14), 151 So.3d 1004, 1012, writ denied, 14-2594 (La.3/6/15), 162 So.3d 372.
*8 As discussed above, we ■find the record sufficiently, establishes Kimberly suffered an aggravation of her pre-existing problems as a result of the accident*. This conclusion was unanimous among all the physicians who treated or examined Kimberly. The extent and severity of this aggravation, however, was very much in dispute. The evidence established there were many inconsistencies in the complaints .voiced by Kimberly to her physicians and the testimony given at trial. The record also shows Kimberly, when asked by Dr. Budden, did not acknowledge 112her pre-existing problems with her back and knee. Further, Kimberly also discontinued her physical therapy on her own without notification to her physicians. She maintained she stopped because the physical therapy sessions were making' her symptoms worse, but Dr. Wyatt’s records indicate she stated the sessions provided her some short-term relief.
Considering the evidence in the record, we accept Dr. Budden’s conclusions that Kimberly sustained aggravating injuries to her knee and back which should have resolved in six months. She also endured two steroid injections, took pain medication and underwent physical therapy, all of which Dr. Budden agreed were warranted.
Based on our review of similar awards, we award Kimberly $25,000.00 in' general damages. Compare Joseph v. Archdiocese of New Orleans, 10-659 (La.App. 4 Cir. 11/10/10), 52 So.3d 203 (general damages award of $30,000.00, with $15,000;00 in medical expenses, for plaintiff who received treatment for soft tissue injuries to his back and neck for approximately six months; the plaintiff therein was also found to have “withheld information from his treating physicians” about “pre-exist-ing back and neck injuries.”) Id. at 205-206; Clement v. Carbon, 13-827 (La.App. 5 Cir. 4/9/14), 153 So.3d 460, (general damages award of $30,000.00, with 9,434.00 in incurred medical expenses, to a man who received seven months treatment for his lower back problems following an automobile accident, as well as receiving treatment for- neck problems); Nusloch v. Browning-Ferris Servs., Inc., 97-528 (La.App. 5 Cir. 11/25/97), 703 So.2d 794 (general damages award of $50,000.00, with $9,206.66 in past medicals, for a plaintiff who suffered a neck and back strain, as well as an aggravation of her prior knee condition (which did result in arthroscopic surgery), and an eye injury resulting in uneven pupil sizes); Jacobs v. City of Marksville, 06-1386 (La.App. 3 Cir. 3/7/07), 953 So.2d 139, writ denied, 07-1093 (La.9/14/07), 963 So.2d 999 ($35,000.00 general damages award to a man who suffered arm and leg pain, lower-back pain, and neck pain as a result of a motor vehicle accident, required one steroid injection and less than one month of physical therapy, and was treated for ten months for his injuries); Waters v. Brookshire Grocery Co., 07-203 (La.App. 3 Cir. 11/7/07), 969 So.2d 1287, (general damages award of $30,000.00 to a woman who was treated for soft-tissue injuries to her knee, back, and neck for approximately nine months)

II. Special Damages.

When a plaintiff alleges that medical expenses were incurred “and that allegation is supported by a bill, unless there "is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment.” Este v. State Farm Ins. Co., 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857. At trial below, Defendants stipulated to the authenticity of medical expenses of Kimberly .in the amount of $26,244.22. Dr. Budden, Defendant’s med *9 ical expert, also specificaEy testified he found the treatments performed “timely and warranted.” Therefore, we award Kimberly the full amount of the stipulated past medicals of $26,244.22.
We find the record does not support Kimberly’s request for future medical expenses for performance of the rhizoto-mies suggested by Dr, Wyatt. Dr. Bud-den specifically disagreed with Dr. Wyatt’s recommendation to perform rhizotomies on Kimberly, finding it was unnecessary as the lumbar MRI did not show any pressure on any of the nerve roots. Dr. Miller offered no opinion on the necessity of rhi-zotomies or any future medical treatment. Dr. Martin, who was one of Kimberly’s treating physicians, did not agree that rhi-zotomies were an appropriate |14course of treatment. Therefore, we wiU not make any award for future medicals as'that component of damages was not proven by Kimberly.
Kimberly also contends she is entitled to a claim for lost earnings. In order to recover actual wage loss, “a plaintiff must prove that he [or she] would .have been earning wages but for the accident in question. In other .words, it is the plaintiffs burden to prove past lost earnings and the length of time missed from work due to the accident.” Boyette v. United Servs. Auto. Assoc., 00-1918, p. 3 (La.4/3/01), 783 So.2d 1276, 1279 (citations omitted). Kimberly’s economist testified her yearly average earnings ' were $19,149.00. Thus, for the six months Kimberly was unable to work she is entitled to an award of $9,574.50 in lost earnings.
DECREE
For the foregoing reasons, finding clear error in the jury’s evaluation of the evidence at trial, we reverse the jury verdict in favor of Defendants and award Kimberly Guidry damages as follows: $9,574.50 for past lost wages, $26,244.22 for past medical expenses and $25,000.00 in general damages. All costs of. this appeal are assessed against Defendants-Appellees.
REVERSED AND RENDERED.

. A rhizotomy is a medical procedure that .involves killing á nerve with a radio frequency tool to lessen the patient’s pain.

. We note Calvin was determined to Háve suffered injuries as a result of the accident, such that Defendants settled their claims with him. However, Kimberly, who was ridingrin the same vehicle, essentially was not allowed any recovery by the jury, not even the ambulance ride to the emergency room.