IzCANNELLA, Judge.
Defendants, Browning Ferris, Inc. (BFI) and Michael Haynes (Haynes), appeal a damage award rendered in favor of plaintiff, Alissa Nusloch. We affirm.
Plaintiff was in her vehicle on November 25, 1994, stopped to make a turn when she was struck in the rear by a car driven by Chris LaHare (LaHare). The LaHare vehicle had immediately before, been rear-ended by a dump truck driven by Haynes, who was in the course and scope of his employment with BFI at the time of the accident.
On April 27, 1995, plaintiff filed suit against BFI, Haynes and LaHare for her personal injuries. Prior to trial, liability was stipulated. A judge trial was held on January 13, 1997 and it was taken under advisement. On January 22, 1997, the trial judge rendered a judgment in plaintiffs favor against BFI and Haynes in the amount of $59,206.66 ($9,206.66 for past medicals and $50,000 for general damages).
On appeal, defendants assert that plaintiff failed to prove that her alleged knee injury was caused by the accident, considering the testimony of her treating [3physician who concluded that the condition was related to an injury sustained the previous year. Defendants next allege that the trial judge committed manifest error in allowing extensive prejudicial testimony by a- claims adjuster regarding defendant’s failure to pay or offer to pay plaintiffs medical expenses. Third, defendants contend that the trial judge abused his discretion in awarding excessive general damages.
At the time of the accident, plaintiff was a single 24 year old who worked as a doctor’s receptionist. Plaintiff testified that the accident occurred while she was stopped, waiting to make a turn on Metairie Road. The impact propelled her car 50 feet, pushed the back seat to the front and buckled the top of her car. Plaintiffs car was totaled. When the impact occurred she felt a jolt in her low back and neck and her knee was jammed forward. Plaintiff said she was dazed afterward, but did not immediately go the emergency room. Later that evening, a friend took plaintiff to the East Jefferson Hospital emergency room. Plaintiff contends that, at the hospital, she complained about her head, neck, back and knee. The hospital report stated that she denied sustaining head trauma, but plaintiff explained that the nurse’s question was couched in terms of contusions, which plaintiff did not have. Plaintiff stated that she underwent a neck x-ray and that the result was negative. She did not mention *796 her knee to the nurse because she was waiting to see Dr. John Garoutte for that complaint. Dr. Garoutte had treated her in the past.
Plaintiff was referred to Dr. Robert Mí-meles, an orthopedic surgeon, who saw her on November 30, 1994 for her back and neck complaints. He was not called to testify, but his report was introduced. No abnormalities were noted. However, Dr. Mímeles referred her to Dr. Kenneth Vogel, a neurosurgeon, for a consultation. Although his notes do not reflect that plaintiff mentioned the knee to him, plaintiff testified that she did tell him that her left knee hurt.
On December 19, 1994, plaintiff saw Dr. Garoutte, an orthopedic surgeon, |4for complaints about her left knee. Dr. Garoutte had treated her for various injuries since plaintiff was a child, including a left knee injury which she sustained the previous year when she tripped and twisted her knee while dancing. Following Dr. Garoutte’s examination, a lump was found on the side of her left knee. On December 27, 1994, Dr. Garoutte performed arthroscopic surgery to remove the lump. Plaintiff saw Dr. Garoutte five times for this condition, including the date of the surgery. Dr. Garoutte’s notes indicate that plaintiff did not tell him about the automobile accident. Dr. Garoutte felt that the mass he removed in the arthroscopic surgery had been there some time because of its appearance when he removed it. However, both plaintiff and the doctor testified that the lump found by Dr. Garoutte was not there prior to the accident.
Plaintiff filled out a form while waiting to see Dr. Garoutte. The form included questions as to whether the injury occurred at work or whether an automobile was involved. Two colors of ink were used on the form, black and blue. Plaintiffs signature and some spaces were filled out in black ink. The question about automobile involvement was marked “no” in black ink. In a blank space where plaintiff wrote that she injured her left knee, someone inserted in blue ink, “old” and “10-9-93.” Plaintiff said she did not add that information. She also denied marking the box questioning automobile involvement “no”. She said she left the boxes blank, but did not remember why. She testified, and a note from his office confirmed, that the office was extremely busy that day. Plaintiff was referred to physical therapy, but did not continue to go because she did not have the money.
On December 8, 1994, plaintiff, complaining of back and neck pain and irregular pupils, indicating a possible problem with her cranial nerves, saw Dr. Vogel. She was in mild distress and also told him she had headaches and nausea. Dr. Vogel found that her pupils were different sizes and that she was suffering mild cervical spasm and mild limitation of motion in her back. She was Isnot suffering radiating pain at that time. Dr. Vogel was concerned about cranial nerve involvement and ordered magnetic resonance imaging (MRI). The MRI was negative, but cranial nerve involvement is not ruled out by Dr. Vogel. Plaintiff did not return to see Dr. Vogel until July 27, 1995 (seven months later). At that time, plaintiff had low back pain. He recommended conservative care and told her to return if she continued to have pain.
Dr. Vogel testified that the difference of eye size and any possible cranial nerve involvement was related to the accident, given the history. However, he felt that she needed to return for electromyography (EMG), an electroencephalogram (EEG) and another neurological evaluation. He stated that treatment for any cranial problem might not be successful after this long without treatment. Dr. Vogel stated that plaintiff’s continued complaints about her neck and back raises the question of herniation or instability of the disc, either of which requires separate treatment.
Plaintiff testified that she had fully recovered from the prior knee injury when this accident happened. Prior to the accident, as an extra way to earn money, plaintiff had been a swim instructor, life guard and aquatic aerobics director. Plaintiff said that she had returned to those activities and had hoped for a career in those areas. Since this accident and the surgery, she asserts that she can no longer perform those activities because of her knee, which still “pops” out and is painful and her back and neck pain. *797 Plaintiff said that she takes an anti-inflammatory every day for the discomfort in her knee and for her worsening pain in her neck and back. She testified that she is now experiencing radiating pain in her extremities and shooting pain in her neck. Plaintiff explained that although she is still in pain, she did not and does not have the money to continue treatment with Dr. Vogel. While she agreed on cross-examination that she had insurance with Gilsbar, Inc., her deductible was $500, which she cannot afford to pay.
The court of appeal may not set aside the trial court’s findings of fact, in the ^absence of manifest error or unless the findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); O’Boyle v. Piglia, 95-990 (La.App. 5th Cir. 2/27/96); 670 So.2d 1339, 1342; Badeaux v. State, Dept. of Transp. and Development, 96-853(La.App. 5th Cir. 2/25/97); 690 So.2d 203, 208. However, plaintiff has the burden of proving by a preponderance of the evidence that the injury was caused by the accident. Tartar v. Hymes, 94-758 (La.App. 5th Cir. 5/30/95); 656 So.2d 756, 758, writ denied 95-1640 (La.10/6/95); 661 So.2d 475. However, defendants allege that the trial judge erred in allowing extensive prejudicial testimony by a claims adjuster regarding defendant’s failure to pay or offer to pay plaintiffs medical expenses. When legal error interdicts the fact-finding process, the manifest error standard is no longer applicable and the appellate court should make its own independent de novo review of the record. Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 747.
The testimony shows that there was extensive evidence related to BFI’s refusal to pay any medical bills for plaintiff, even though they were under no obligation. Plaintiff did not show the relevance of this information. Thus, we agree that the trial judge erred in admitting the evidence. As a result, we have conducted a de novo review of the case.
In this case, plaintiff had a pre-exist-ing knee injury. That injury caused her problems several months before the accident, but was not symptomatic prior to this accident. Both Dr. Garoutte and plaintiff testified that the lump on her knee was not there the previous year. The evidence supports a finding that the flare-up and surgery on the knee was a direct result of the accident and that plaintiff did not have back or neck problems prior to the accident. Consequently, we find plaintiff proved her case by a preponderance of the evidence.
An award by the trier of fact may only be modified for excessiveness or inadequacy after the appellate court determines that the trier of fact abused his (its) discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). In order to make pthis determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after an articulated analysis of the facts and circumstances peculiar to the particular ease and plaintiff, may an appellate court conclude that the award is inadequate or excessive. See Reck v. Stevens, 373 So.2d at 501; Cariere v. State Farm Insurance Co., 467 So.2d 867 (La.App. 2d Cir.1985).
The discretion vested in the trier of fact is great. Thus, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). In Youn, the court stated: “[Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.” Youn v. Maritime Overseas Corp., 623 So.2d at 1261; Tartar v. Hymes, 656 So.2d at 756, 760-761.[1]
*798 In this ease, plaintiff suffered a neck and back strain, an aggravation of her prior knee condition, resulting in arthroscopic surgery, and an eye injury resulting in uneven pupil sizes, possibly related to the cranial nerve. Based on the evidence in this case, we find that the general damage award is not excessive.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by appellants.
AFFIRMED.

. When the appellate court determines that the factfinder abused its discretion, it can then resort to a review of prior awards to determine the appropriate modification of the award. Theriot v. Allstate Ins. Co., 625 So.2d at 1340. Prior awards under similar circumstances serve only as a general guide. Theriot v. Allstate Ins. Co., 625 So.2d at 1340. In reviewing other awards, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. Theriot v. Allstate Ins. Co., 625 So.2d at 1340. When the appellate court is compelled to modify an award, it will only be disturbed to the extent of lowering or raising an *798 award to the highest or lowest point which is reasonably within the discretion afforded the trial court. Theriot v. Allstate Ins. Co., 625 So.2d at 1340; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).