PABLO DANILO GONZALEZ

VERSUS

DESTINY WRICKS AND STATE FARM
MUTUAL AUTOMOBILE INSURANCE
COMPANY

NO. 23-CA-298

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 807-140, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

May 08, 2024

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Stephen J. Windhorst

**REVERSED AND RENDERED**
    **FHW**
    **MEJ**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
PABLO DANILO GONZALEZ
Ivan A. Orihuela

COUNSEL FOR DEFENDANT/APPELLEE,
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
Nicole T. Bowyer

**WICKER, J.**

In this case arising from a motor vehicle accident, plaintiff appeals the trial court's February 27, 2023 judgment rendered in favor of defendant, dismissing his case with prejudice. For the following reasons, we reverse the trial court's judgment and render judgment in favor of plaintiff.

## FACTS AND PROCEDURAL HISTORY

On June 8, 2020, plaintiff, Pablo Danilo Gonzalez, filed this lawsuit against Destiny Wricks and her insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), seeking damages incurred as a result of a motor vehicle accident on December 28, 2019. In his petition, Mr. Gonzalez asserts that he was traveling on Brooklyn Avenue in Harvey, Louisiana, and attempted to cross the intersection of Brooklyn and Lapalco Boulevard when a vehicle operated by Ms. Wricks, who was traveling on Lapalco, ran a red light and struck his vehicle. He contends that he sustained both property damages and personal injuries.

On August 7, 2020, State Farm answered the petition, admitting that Ms. Wricks was its insured on the date of the accident, but generally denying the other allegations and asserting that Mr. Gonzalez was at fault for the accident.

Trial of this matter commenced on January 18, 2023. Prior to taking testimony, Mr. Gonzalez's certified copies of medical records and a bill from Louisiana Primary Care Consultants were admitted into evidence without objection, and the parties stipulated that his damages did not exceed $50,000. The parties also stipulated that State Farm issued an insurance policy covering Ms. Wricks at the time of the accident. Counsel for Mr. Gonzalez indicated that Ms. Wricks was not served with the lawsuit and that he would dismiss the claims against her, but maintain a direct action against her insurer, State Farm.

At trial, Mr. Gonzalez testified via a Spanish interpreter that on December 28, 2019, sometime between 12:30 a.m. and 1:30 a.m., he was driving his Ford 150

pickup truck and stopped at a red light at the intersection of Brooklyn and Lapalco for about five to six seconds. He stated that when the light turned green, he waited two or three seconds and then slowly proceeded to cross the Lapalco lanes of travel when a car driven by Ms. Wricks ran a red light and collided with his vehicle. He asserted that the collision occurred in the farthest lane from the neutral ground as he was crossing over Lapalco. He testified that he swerved to the left and braked, but the car was coming very fast and he was unable to avoid the collision.

Mr. Gonzalez testified that the police and an ambulance subsequently arrived. He stated the police officer spoke to him in English, but his native language is Spanish and he does not speak English fluently. Mr. Gonzalez said he explained to the officer that he started to cross when the light was green, but the officer found the accident was his fault and gave him traffic citations. He asserted that he felt pain in his neck, back, and left knee, and sought medical treatment four to five days later.

On cross-examination, Mr. Gonzalez admitted that he did not have a driver's license at the time of the accident. However, he said he was familiar with the intersection and had been traveling through it for about two years prior to the accident. Mr. Gonzalez testified that he noticed Ms. Wricks' vehicle in his peripheral vision when he was "halfway" through the intersection, but there was nothing he could do because it was coming very fast. He identified photographs of his truck taken after the accident and agreed that the front of his truck struck the rear driver-side door of Ms. Wricks' car. Mr. Gonzalez acknowledged he received three traffic citations for: 1) driving without a license; 2) running a red light; and 3) careless operation. The citations issued to Mr. Gonzalez were admitted into evidence.

On re-direct, Mr. Gonzalez testified that he had been driving since he was fifteen years old and had a driver's license in his country, Guatemala. At the

conclusion of Mr. Gonzalez's testimony, the trial was continued in order to have Officer Darren Rivere, who investigated the accident, testify.

Trial resumed on February 16, 2023. Officer Darren Rivere testified that he is a patrol deputy for the Jefferson Parish Sheriff's Office, and he responded to the accident at the intersection of Lapalco and Brooklyn on December 28, 2019. When he arrived, Mr. Gonzalez's vehicle was parked in a nearby parking lot and Ms. Wricks' vehicle was positioned against a U-Haul storage building next to the intersection. Officer Rivere identified photographs of the intersection, Mr. Gonzalez's truck, and Ms. Wricks' car.

Officer Rivere testified he looked at the intersection to determine if the traffic lights were functioning properly and found that they were. He first spoke to Ms. Wricks, who advised him she was driving westbound on Lapalco and had a green light when she reached the intersection at Brooklyn and was struck by another vehicle. Counsel for Mr. Gonzalez objected to this testimony as hearsay, but the trial court overruled the objection. According to Officer Rivere, Ms. Wricks indicated the collision caused her to lose control and strike a storage unit in front of the U-Haul building.

After obtaining Ms. Wricks' statement, Officer Rivere approached Mr. Gonzalez and asked what happened. Mr. Gonzalez indicated that he was traveling north on Brooklyn and had a green light to cross Lapalco, but when he proceeded into the intersection, he was struck by another vehicle. Because the drivers had conflicting stories, Officer Rivere decided to question them again. He asked Ms. Wricks again what had happened and she provided the same information as she had previously given. Officer Rivere testified that when he asked Mr. Gonzalez to tell him again what had happened, he provided a different sequence of events than he had previously given.

Officer Rivere assessed the vehicles and observed that Ms. Wricks had damage to the driver's side front and rear of her vehicle and Mr. Gonzalez had damage only to the front end of his vehicle. He testified that he issued citations to Mr. Gonzalez for disregarding a red light, no driver's license, and careless operation. He further stated that he determined that Mr. Gonzalez was at fault for the accident due to his conflicting statements and because the damage to the vehicles indicated Ms. Wricks had control of the intersection.

On cross-examination, Officer Rivere testified that an interpreter could have been called to the scene, but Mr. Gonzalez did not request one. He stated that Mr. Gonzalez spoke English fluently, though with an accent. He admitted that while he felt Mr. Gonzalez's story changed at the scene when he spoke to him a second time, he did not recall specifically what changed or write it in his report. He also acknowledged that he did not take measurements at the scene and was not trained in accident reconstruction.

At the conclusion of trial, the trial court ruled in favor of State Farm. The court stated:

> …the Court considering the testimony of all the parties, the dispute over who may have had the red light, even if the Court goes ahead and assumes that Mr. Gonzalez had the green light, Mr. Gonzalez was in a stopped position at an intersection attempting to make a turn across the primary roadway, that being Lapalco, and even if the light turns green, he doesn't have the right to go ahead and just accelerate into the intersection if he sees another vehicle that may be disregarding the red light.
>
> So, I believe that taking into account the conflict as to who had the green light and the fact that Mr. Oriheula's client, Mr. Gonzalez, had the last clear chance to avoid the accident, the Court's going to rule in favor of the defendant.

On February 27, 2023, the trial court signed a written judgment in favor of State Farm, dismissing Mr. Gonzalez's claims with prejudice. Mr. Gonzalez appeals.

## LAW AND DISCUSSION

In a civil action, the plaintiff seeking damages must prove each element of his claim by a preponderance of the evidence. *Hamilton v. Progressive Waste Solutions of LA, Inc.*, 23-139 (La. App. 5 Cir. 11/29/23), 377 So.3d 855, 858; *Erwin v. State Farm Mut. Auto. Ins. Co.*, 34,127 (La. App. 2 Cir. 11/1/00), 771 So.2d 229, 230-32, *writ denied*, 00-3285 (La. 2/2/01), 784 So. 2d 6. Proof by preponderance of the evidence means that the evidence, when taken as a whole, shows that the fact to be proven is more probable than not. *Id.*

Allocation of fault is a question of fact for the trial court to decide. *Solomon v. American Nat'l Prop. & Cas. Co.*, 49,981 (La. App. 2 Cir. 9/4/15), 175 So.3d 1024; *Kelly v. Boh Bros. Const. Co., Inc.*, 96-1051 (La. App. 5 Cir. 4/9/97), *writs denied*, 97-1226, 97-1249 (La. 9/5/97), 700 So.2d 507, 509. Like all factual findings, the trier of fact is owed great deference in its allocation of fault and its findings may not be reversed unless clearly wrong or manifestly erroneous. *Tamayo v. American Nat. General Ins. Co.*, 14-130 (La. App. 5 Cir. 9/24/14), 150 So.3d 459, 465; *Phipps v. Allstate Ins. Co.,* 05-651 (La. App. 5 Cir. 2/27/06), 924 So.2d 1081, 1083. After reviewing the entire record, the appellate court may reverse the trial court's findings if there is no reasonable factual basis for the findings and the record establishes the trial court was manifestly erroneous or clearly wrong. *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592 (La. 12/8/15), 193 So.3d 1110, 1116; *Stobart v. State through Dept. of Transportation and Development*, 617 So.2d 880, 882 (La. 1993).

Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731, 735. When legal error interdicts the fact-finding process, the manifest error standard is no longer applicable and the appellate court should

make its own independent *de novo* review of the record. *Nusloch v. Browning-Ferris Services, Inc.*, 97-528 (La. App. 5 Cir. 11/25/97), 703 So.2d 794, 797; *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742, 747. If the record is complete, the appellate court must undertake an independent *de novo* review of the record and determine which party or parties should prevail by a preponderance of the evidence. *Id.*

On appeal, Mr. Gonzalez asserts that the trial court erred by ruling in favor of State Farm, arguing that the trial court's factual findings were inconsistent with the facts established at trial. He argues that the trial court erred in finding that even if he had the green light, he failed to exercise the last clear chance to avoid the accident, because his unrefuted testimony established he was unable to avoid the impact. Mr. Gonzalez further contends his testimony showed that Ms. Wricks was not in the intersection when he entered it and that Ms. Wricks disregarded a red light, causing the collision.

State Farm responds that the trial court correctly found that Mr. Gonzalez had the last clear chance to avoid the accident, because he testified that he saw Ms. Wricks in his peripheral vision and, therefore, he should have known that the intersection was not clear enough to permit safe entry. It argues that Mr. Gonzalez should have waited until Ms. Wricks cleared the intersection before proceeding forward on a green light.

In *Gibson v. State Through Dep't of Transp. & Dev.*, 95-1418, 95-1419 (La. App. 1 Cir. 4/4/96), 674 So.2d 996, 1004, *writs denied*, 96-1862, 96-1895, 96-1902 (La. 10/25/96), 681 So.2d 373, 374, the Court discussed comparative fault and the last clear chance doctrine as follows:

> Prior to the adoption of comparative fault in Louisiana, the doctrine of last clear chance was created to escape the harsh effects of the contributory negligence defense which, in its strict application, operated as an absolute bar to a plaintiff's recovery. *See Baumgartner v. State Farm Mut. Auto. Ins. Co.*, 356 So.2d

400, 403 (La.1978). In a comparative fault analysis, whether the plaintiff had the last clear chance to avoid an accident is a determination for the trier of fact. In *Watson v. State Farm Fire and Cas. Ins. Co.,* 469 So.2d 967 (La.1985), the court explained the appropriate considerations for a comparative fault analysis, as follows:

> In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Watson,* 469 So.2d at 974. Thus, the principles considered in the application of the last clear chance doctrine are subsumed by the comparative fault analysis. The application of the last clear chance doctrine is not, therefore, a separate consideration for the trier of fact.

*See also Edwards v. LCR-M Corp.*, 41,125 (La. App. 2 Cir. 7/12/06), 936 So.2d 233, 242.

In its reasons for judgment, the trial court stated, "even if the light turns green, he doesn't have the right to go ahead and just accelerate into the intersection if he sees another vehicle that may be disregarding the red light." However, this is a misinterpretation of Mr. Gonzalez's trial testimony.

At trial, Mr. Gonzalez did not indicate he just accelerated into the intersection when the light turned green or that he saw another vehicle that may be disregarding a red light. Rather, he stated that when the light turned green, he waited about two seconds before proceeding and did not see Ms. Wricks' vehicle in his peripheral vision until he was "halfway" through the intersection. He stated that Ms. Wricks' vehicle was coming very fast and he was unable to avoid the collision. Considering the trial testimony and evidence, we find the trial court

erred by finding that Mr. Gonzalez had the last clear chance to avoid the accident and therefore, was solely at fault.

Mr. Gonzalez also argues the trial court erred by allowing Officer Rivere to testify that Ms. Wricks told him at the accident scene that she had the green light, because it was impermissible hearsay evidence. He asserts that his testimony that he had a green light was unrefuted and should have been accepted as true, where neither Ms. Wricks nor any other eyewitness testified at trial.

State Farm responds that the trial court correctly allowed Officer Rivere to testify about Ms. Wricks' statements at the accident scene. It argues that this testimony was not hearsay because the statements were not offered "for the truth of the matter asserted," but rather to explain the course of Officer Rivere's investigation.

Hearsay is "a statement other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(A)(1)(C). Hearsay is inadmissible "except as otherwise provided by this Code or other legislation." La. C.E. art. 802. The Louisiana Supreme Court has stated that hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. *Trascher v. Territo*, 11-2093 (La. 5/8/12), 89 So.3d 357, 364. However, when an out-of-court statement is offered for a purpose other than to establish the truth of the assertion, its evidentiary value is not dependent upon the credibility of the out-of-court asserter and the statement falls outside the scope of the hearsay exclusionary rule. *Id.*; *State v. Martin*, 458 So.2d 454 (La. 1984).

In support of its position that Ms. Wricks' statements to Officer Rivere were not hearsay, State Farm cites *State v. Davis*, 06-402 (La. App. 5 Cir. 11/28/06), 947 So.2d 48, 56, *writ denied*, 07-03 (La. 9/14/07), 963 So.2d 996, in which this Court

found that a police officer's testimony may include information provided by another person without constituting hearsay, if the testimony is offered to explain the course of the investigation and the steps which led to the defendant's arrest. However, in *Davis*, this Court also stated that an "officer's testimony is not considered hearsay when he does not testify to the substance of what was told to him by another person, but rather what he did in response to that information." *Id.*

In the present case, Ms. Wricks did not testify at trial. Officer Rivere's testimony that Ms. Wricks said she had the green light was an out-of-court statement that was not subject to cross-examination. Despite State Farm's assertions to the contrary, Officer Rivere's testimony that Ms. Wricks told him she had the green light was clearly offered for the truth of the matter asserted. Officer Rivere testified as to the substance of Ms. Wricks' statement, not merely what he did in response to her assertions. This testimony influenced the trial court's decision, as the substance of Ms. Wricks' statement formed the basis for the dispute as to who had the green light, and the trial court considered this dispute in rendering its decision. *See Sciortino v. Wood*, 02-233 (La. App. 5 Cir. 9/18/02), 829 So.2d 476, 478, in which this Court found that specific verbal exchanges between a witness and a police officer investigating an accident were classic, inadmissible hearsay.

After review, we find that the trial court erred by overruling Mr. Gonzalez's objection and allowing Officer Rivere to present hearsay testimony that Ms. Wricks said she had the green light. Without this testimony, Mr. Gonzalez's testimony that he had the green light was undisputed. Mr. Gonzalez's objection to this testimony should have been sustained and the testimony excluded as inadmissible hearsay.

The trial court's erroneous admission of Ms. Wricks' out-of-court statements constituted legal error, because the evidence was clearly prejudicial to Mr.

Gonzalez's case. Considering this legal error, along with the trial court's error in finding Mr. Gonzalez had the last clear chance to avoid the accident, we find that a *de novo* review in this case is appropriate.

La. R.S. 32:232 governs the duty of motorists facing traffic control signals. A motorist with a green light has the right-of-way and may generally assume that motorists traveling on intersecting streets will obey the traffic signal and respect his right-of-way. La. R.S. 32:232(l)(a); *Ramos v. Louisiana Farm Bureau Casualty Insurance Co.*, 21-228 (La. App. 1 Cir. 12/9/21), 333 So.3d 453, 456. However, a motorist cannot depend exclusively on a favorable green light. *Id.* A motorist has a duty to watch for vehicles already in the intersection when the light changes. *Palmisano v. Ohler*, 16-160 (La. App. 5 Cir. 12/7/16), 204 So.3d 1134, 1138. This duty does not extend to watching for traffic that has not yet entered the intersection. *Id.*

Mr. Gonzalez argues that he was entitled to assume that traffic approaching the intersection would comply with the traffic signals. He further contends that Ms. Wricks was clearly at fault for the accident, because she failed to exercise ordinary care by disregarding a red light.

Uncontroverted evidence should be taken as true to establish a fact for which it is offered absent any circumstances in the record casting suspicion as to the reliability of this evidence and sound reasons for its rejection. *Earls v. McDowell*, 07-17 (La. App. 5 Cir. 5/15/07), 960 So.2d 242, 248; *Taviani v. Akrom, Inc.*, 22-475 (La. App. 5 Cir. 4/26/23), 363 So.3d 1284, 1291, *writ denied*, 23-0863 (La. 10/10/23), 371 So.3d 456.

The record does not show there were circumstances casting suspicion on the reliability of Mr. Gonzalez's unrefuted testimony that he: 1) had the green light; 2) proceeded with caution by waiting two to three seconds before slowly entering the intersection; 3) was halfway through the intersection when he saw Ms. Wricks'

vehicle in his peripheral vision; and 4) was unable to avoid the collision. Although Officer Rivere testified he found Mr. Gonzalez to be at fault due to his conflicting statements, he could not recall what statements were conflicting or inconsistent. Officer Rivere also testified the damage to the vehicles showed that Ms. Wricks had control of the intersection. Although the photographs show that the front of Mr. Gonzalez's vehicle struck the side of Ms. Wricks' vehicle, this fact alone does not establish that Ms. Wricks entered the intersection before Mr. Gonzalez. Officer Rivere testified that he did not take measurements at the scene and was not trained in accident reconstruction. Further, there was no evidence of Ms. Wricks' speed other than Mr. Gonzalez's testimony that her vehicle was coming very fast.

Based on our independent *de novo* review of the record, and considering Mr. Gonzalez's unrefuted testimony that he had the green light and did not see Ms. Wricks' vehicle when he entered the intersection, we find that Mr. Gonzalez proved by a preponderance of the evidence that the accident was solely caused by the negligence and/or fault of Ms. Wricks. Accordingly, we find that State Farm is liable for the damages Mr. Gonzalez sustained in this accident.

When a fact finder does not reach an issue because of an earlier finding disposing of the case, the court of appeal, in reversing the earlier finding, must make a *de novo* determination of the undecided issues from the facts in the record. *Luquette v. Great Lakes Reinsurance (Uk) PLC*, 16-422 (La. App. 5 Cir. 12/21/16), 209 So.3d 342, 350, *writ denied*, 17-0136 (La. 3/13/17), 216 So. 3d 806; *Lasha v. Olin Corp.,* 625 So.2d 1002 (La. 1993). The reviewing court must award damages that are just and fair for the damages revealed by the record, where the trial court has made no award for damages. *Dundas v. Real Superstore,* 94-979 (La. App. 3 Cir. 2/1/95), 650 So.2d 402, 405, *writ denied,* 95-0470 (La. 4/28/95), 653 So.2d 590.

Having found on *de novo* review that State Farm is liable for Mr. Gonzalez's damages, we must assess the damages and award just compensation in accordance with the testimony and evidence. We first address special damages.

"Special damages" are those which must be specially pled or have a ready market value, that is, the amount of the damages supposedly can be determined with relative certainty. *Prest v. Louisiana Citizens Prop. Ins. Corp.*, 12-513 (La. 12/4/12), 125 So.3d 1079, 1090; *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, 74.

At the beginning of trial, Mr. Gonzalez's medical records and bill for medical treatment from Louisiana Primary Consultants were admitted into evidence via stipulation of the parties. The bill reflects the expenses for Mr. Gonzalez's treatment totaled $6,387. When a plaintiff claims he has incurred medical expenses due to injuries suffered in an accident and the treatment is supported by a bill, this evidence is sufficient to support and award for past medical expenses, unless there is contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. *Jackson v. Drachenburg*, 19-345 (La. App. 5 Cir. 1/8/20), 288 So.3d 289, 293.

The record does not contain evidence casting reasonable suspicion as to whether the bill is related to the accident. Based on the testimony, medical records, and accompanying bill, we find Mr. Gonzalez is entitled to recover his medical expenses, and we award $6,387 in special damages for these expenses.

Mr. Gonzalez also seeks recovery for the property damage to his truck allegedly caused by the accident. He asserts he obtained an estimate for repairs from DLC Body Shop in the amount of $3,468.55, but did not have his truck repaired because he did not have the money and could still drive it. When he moved to have the repair estimate admitted into evidence, counsel for State Farm objected its admissibility on the grounds that it is hearsay and that State Farm did

not stipulate to its authenticity. Counsel for Mr. Gonzalez replied that he was not introducing it "for the contents of the document;" rather, it was only offered as "that's the document that he was handed by the Body Shop." The trial court admitted the repair estimate into evidence for the purpose of showing "that's the document that they gave him."

After *de novo* review, we find that the repair estimate is hearsay and may not be considered. Although La. C.E. art. 803(6) provides an exception to the hearsay rule for "records of regularly conducted business activity," the party who seeks to introduce written hearsay evidence under La. C.E. art. 803(6) must authenticate it by a qualified witness having "familiarity with the record-keeping system" of the business. *Finch v. ATC/Vancom Mgmt. Services Ltd. Partnership*, 09-483 (La. App. 5 Cir. 1/26/10), 33 So.3d 215, 220. No testimony was provided to authenticate the repair estimate or to show it was a business record kept in the regular course of business. Further, Mr. Gonzalez did not offer the estimate as proof of the amount of damages to his vehicle, but only as a "document that he was handed." We also point out there was no testimony as to the condition of the truck prior to the accident.

The plaintiff bears the burden of proving special damages by a preponderance of the evidence. *Crawford v. Allstate Insurance Company*, 21-117 (La. App. 5 Cir. 11/3/21), 330 So.3d 1183, 1190. After review, we find Mr. Gonzalez failed to meet his burden of proving that he is entitled to an award for the alleged property damage to his truck.

We now turn to general damages. "General damages" involve mental or physical pain and suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. *Willis v. Noble Drilling (US), Inc.*, 11-598 (La. App. 5 Cir. 11/13/12), 105 So.3d 828, 845; *McGee v. A C and S, Inc.*, 05-1036 (La.

7/10/06), 933 So.2d 770, 774. The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. *Willis*, 105 So.3d at 845; *Jenkins v. State ex rel. Dept. of Transp. and Development*, 06-1804 (La. App. 1 Cir. 8/19/08), 993 So.2d 749, 767, *writ denied*, 08-2471 (La. 12/19/08), 996 So.2d 1133.

Upon a *de novo* review of the record, an appellate court is not constrained to the lowest or highest amount reasonable for damages. Instead, the appellate court is authorized to award an amount which represents appropriate compensation for the damages revealed in the record. *Clement v. Carbon*, 13-827 (La. App. 5 Cir. 4/9/14), 153 So.3d 460, 465.

At trial, Mr. Gonzalez testified that he felt pain in his neck, back, and left knee after the accident, and he did not have this pain prior to the accident. The medical records indicate that Mr. Gonzalez first went to Louisiana Primary Care Consultants in January 2020 for neck, back, and left knee strains. Mr. Gonzalez testified that the doctors prescribed pain medication for him, and he received therapy for his neck, back, and left knee once or twice per week. The medical records support Mr. Gonzalez's testimony that he received conservative treatment for neck, back, and left knee pain, as well as headaches, for approximately eight months until his pain resolved. The records show he was discharged on August 28, 2020. On cross-examination, Mr. Gonzalez acknowledged that his doctors recommended an MRI of his cervical spine and left knee, but he did not have this imaging done.

In determining the amount of general damages to award Mr. Gonzalez, we have considered prior awards for soft tissue injuries. *See*, *e.g.*, *Caruso v. Academy Sports and Outdoors*, 18-496 (La. App. 5 Cir. 4/24/19), 271 So.3d 355 (upheld awards of $3,500 in special damages and $21,250 in general damages for strain/sprain of cervical spine, thoracic spine, and shoulders, along with nose pain

and facial contusions; treated for eight to nine months); *Prejeant v. Gray Insurance Co.*, 15-87 (La. App. 5 Cir. 9/23/15), 176 So.3d 704 (upheld awards of $5,105 in medical expenses and $16,000 in general damages for neck, back, and shoulder soft tissues injuries with eight months of conservative treatment); *Romano v. Jefferson Parish Sheriff's Office*, 13-803 (La. App. 5 Cir. 3/26/14), 138 So.3d 688, *writ denied*, 14-700 (La. 5/16/14), 139 So.3d 1028 (upheld awards of $14,243 in special damages and $2,000 per month, totaling $48,000, in general damages for two years of conservative treatment due to neck and back pain caused by a car accident).

Although reviewing courts take prior awards into consideration, general damages are to be decided on a case-by-case basis. *Baudier v. Cheron*, 04-5 (La. App. 5 Cir. 5/26/04), 876 So.2d 165, 173. Considering the testimony and evidence presented, along with the general damages awards in other cases, we award Mr. Gonzalez $19,000 in general damages.

**DECREE**

Based on the foregoing, we reverse the trial court's judgment and render judgment in favor of Mr. Gonzalez, finding State Farm liable for his injuries. We further award Mr. Gonzalez $6,387 in special damages and $19,000 in general damages, for a total damage award of $25,387.

**REVERSED AND RENDERED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 8, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

**23-CA-298**

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
NICOLE T. BOWYER (APPELLEE)

### MAILED

IVAN A. ORIHUELA (APPELLANT)
ATTORNEY AT LAW
3213 FLORIDA AVENUE
SUITE C
KENNER, LA 70065